Richmond

SARGENT ELECTRIC COMPANY, ET AL.

V.

JOHN W. WOODALL

Record No. 831292.

November 30, 1984.

Present: All the Justices.

*Benjamin J. Trichilo (Lewis & Trichilo*, on briefs), for appellants.

*J. Hunt Brasfield (Ashcraft & Gerel*, on brief), for appellee.

POFF, J., delivered the opinion of the Court.

The principal issue in this workers' compensation case is whether the amended version of Rule 13 of the Industrial Commission may be applied retrospectively.[1]

On October 20, 1977, John Woodall suffered a cervical sprain when he was assaulted by a fellow employee of Sargent Electric Company. At that time Woodall was earning an average weekly wage of $503.00 ($26,161.70 annually). Sargent's insurance carrier, Insurance Company of North America, acknowledged the claim as compensable and, pursuant to a memorandum of agreement, compensated Woodall for temporary total work incapacity from October 27, 1977 through March 17, 1978.

On March 18, 1978, Woodall returned to work for Sargent at a reduced wage of $463.60. Under a supplemental memorandum of agreement approved by the Commission, Woodall was awarded $26.34 per week for temporary partial work incapacity. Compensation was paid at that rate from March 18, 1978 through August 19, 1979, after which the carrier, without explanation, unilaterally suspended payments.

Despite Woodall's protestations and the Industrial Commission's reminders that the award for temporary partial incapacity remained outstanding, the carrier took no action on the matter until October 22, 1982. On that date, the carrier filed a change-in-condition application pursuant to Code § 65.1-99, alleging that Woodall had resumed work for other employers as of August 19, 1979 at an average weekly wage of $564.16. The Commission rejected the application "[i]n view of the lack of supporting information" required by Rule 13. The Commission again reminded the carrier that the award remained outstanding.

On December 7, 1982, the Commission referred the matter to the hearing docket on its own motion. *See* Code § 65.1-99. A hearing was held January 10, 1983 before a deputy commissioner who considered evidence indicating that Woodall had earned annual wages fluctuating between $18,000 and $29,000 in the years

---

[1] Prior to its amendment, effective May 1, 1979, Rule 13 required an employer or insurer to pay benefits due under an outstanding award up to "the date the employee returned to work . . . or as of a date fourteen days prior to the date the application [for a hearing on a change in condition] is filed, whichever is later"; under the amended version of the rule, as interpreted by the appellant, an insurance carrier may postpone the filing of its application to *any date* following the employee's return to work, provided only that "compensation must be paid to the date of return, as evidenced by supporting data filed with the application." Rule 13, Rules of the Industrial Commission of Virginia, *reprinted in* Virginia Rules Annotated 322 (Michie 1983).

1979 through 1982. The deputy commissioner found that the carrier was not in compliance with Rule 13 in that, for a period of more than three years, it had failed to pay compensation under the outstanding award and failed to obtain current wage information from the claimant through proper discovery procedures. The deputy commissioner held "that the correct and most equitable means of handling this extremely complex factual situation is to require payment of the outstanding award up through [December 7, 1982] plus the 20% penalty mandated by Section 65.1-75.1 . . . ."[2] The outstanding award was terminated effective that date, resulting in an award of delinquent compensation and penalties in the amount of $5,427.54. Woodall's claims for further incapacity were referred to the Commission's claims division.

The carrier appealed to the full Commission, requesting that the award be modified by deleting benefits and penalties for those weeks in which Woodall earned in excess of his pre-injury average weekly wage. The Commission declined on the ground that the carrier's failure to comply with Rule 13 was the reason the award remained outstanding. In its opinion dated July 8, 1983, the Commission held that "with this outstanding award, it makes no difference that the employee may have had some earnings during portions of this time in excess of his prior average weekly wage."

On appeal to this Court, the carrier argues that the Commission "erred by failing to follow the requirements of its own Rule 13", and further, that by requiring the carrier to pay compensation for those weeks in which the claimant's weekly wage equalled or exceeded his pre-injury wages, the Commission exceeded its authority under the Act.

We do not agree with either contention. The Commission's holding is supported by our decision in *Board and Paper Company* v. *Parker*, 201 Va. 328, 111 S.E.2d 453 (1959). There, as here, the insurance carrier unilaterally suspended compensation payments to a claimant who had returned to work. The carrier subsequently filed an application for hearing based on a change in condition, alleging that the claimant had returned to work at a wage equal to or greater than his pre-injury wage. Because the

---

[2] § 65.1-75.1. **Failure to pay compensation within two weeks after it becomes due.** — If any payment is not paid within two weeks after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty percent thereof, which shall be paid at the same time as, but in addition to such compensation, unless the employer is not required to make such payment when due according to the provisions of this Act.

application showed on its face that the carrier had suspended payments under the outstanding award several months prior to filing the application, the Commission affirmed an opinion of a deputy commissioner dismissing the carrier's application. Upholding the Commission's decision, we pointed out that Rule 13 "was adopted to require prompt payment of compensation to all claimants entitled thereto" and that "[o]ne of its purposes was to eliminate the result which took place in this case, that is, the arbitrary discontinuance of compensation by the employer and the insurance carrier without legal sanction." *Id.* at 331-32, 111 S.E.2d at 456.

The carrier argues, however, that *Board and Paper Company* was decided prior to May 1, 1979, when the amendment here at issue became effective. The carrier concedes that, prior to its amendment, Rule 13 "required payment of benefits to the date of filing of the change in condition Application, even in those instances where the employee had actually returned to work." But, as interpreted by the carrier, the amended version "permits benefits to be terminated once the employee has returned to work, and places no time limits for the filing of an Application for Hearing by the employer or insurer." Thus, assuming that the carrier's interpretation is correct,[3] disposition of the case depends primarily on whether the amended version of Rule 13 may be applied retroactively.

The carrier argues that Rule 13 is procedural in nature and disturbs no vested rights and, therefore, that the amended version may be applied retroactively. We disagree.

The General Assembly has authorized the Industrial Commission to "make rules, not inconsistent with this Act, for carrying out the provisions of this Act." Code § 65.1-18. The adoption of such rules is a legislative act, and the enactment is binding in law upon the parties and the Commission as well. A legislative enactment, if purely procedural in nature, may be given retroactive effect, but not if it creates new rights, imposes new duties, or impairs vested interests. *See Duffy* v. *Hartsock*, 187 Va. 406, 417, 46 S.E.2d 570, 574-75 (1948). Nor may such an enactment impair rights substantive in character, even if not vested in interest. *Shiflet* v. *Eller*, 228 Va. 115, 120, 319 S.E.2d 750, 753-54 (1984).

---

[3] In light of our holding in this case, we are not required to determine the effect of the amendment on the requirements of Rule 13.

We have held that the former version of Rule 13 "is a valid procedural rule and is not . . . of a substantive nature." *Board and Paper Company*, 201 Va. at 331, 111 S.E.2d at 456. But, if the carrier's interpretation of the amended version is correct, retroactive application would impair Woodall's vested interests and create a new right in the carrier. Upon entry of the award in his favor, Woodall became vested with the right to receive compensation benefits so long as the award remained outstanding, and under the former version of Rule 13, that right continued until he returned to work at an average weekly wage equal to his pre-injury wage, or 14 days prior to the carrier's filing an application for hearing, whichever date was later. And, under the carrier's interpretation, the amended version of the rule gave it a right not enjoyed under the former version, *viz.*, the unilateral right to decide when to discontinue payments and, then, to postpone the filing of an application for a hearing on the merits of its decision for more than three years.

We hold, therefore, that the amended version of Rule 13 may not be applied retrospectively.

Alternatively, the carrier argues that "this case does not involve retroactive application of the May 1979 amendment" because "benefits had been paid through August 19, 1979." But, as we have said, his right to receive benefits continued so long as the award remained outstanding, and where substantive rights are concerned, "[t]he law in effect at the time of the incapacity governs the rights of the parties." *Coal Company* v. *Pannell*, 203 Va. 49, 54, 122 S.E.2d 666, 670 (1961).

Finally, the carrier contends that, once its application was filed, the Commission had the authority to "make an award ending, diminishing or increasing the compensation previously awarded," Code § 65.1-99, and that it erred in awarding benefits for those weeks in which Woodall's weekly wage was as much as his pre-injury wage. But an employee's entitlement to benefits for partial incapacity is based upon "the difference between his *average* weekly wages before the injury and the *average* weekly wages which he is able to earn thereafter." Code § 65.1-55 (emphasis added). From the record before us, we cannot determine whether the statutory compensation formula was correctly applied, but the computation made by the Commission comes to us with a presumption of correctness. If the result is harsh, the carrier cannot complain, for it was "brought about by [the carrier's] failure or

refusal to make [timely] application for a hearing" when Woodall returned to work. *Board and Paper Company*, 201 Va. at 331, 111 S.E.2d at 456. *See also, Gray* v. *Underwood Brothers*, 164 Va. 344, 349, 180 S.E. 317, 319 (1935).

Finding no merit in the assignments of error, we will affirm the award.

*Affirmed.*