PRESENT:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and Lemons, JJ., and Compton, S.J.

MONDELL H. WASHINGTON                    OPINION BY
                              SENIOR JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 030637                 March 5, 2004

UNITED PARCEL SERVICE OF
AMERICA, ET AL.

FROM THE COURT OF APPEALS OF VIRGINIA


In this workers' compensation case, the sole issue properly before the Court is whether the Court of Appeals of Virginia erred in affirming the Workers' Compensation Commission, which refused the claimant's request to assess a 20% penalty against the employer's insurance carrier for its failure to pay the claimant benefits as provided in an open award.

Mondell H. Washington, the claimant, worked in the Fredericksburg area as a "preloader" for United Parcel Service of America, the employer, which was insured by Liberty Mutual Fire Insurance Company, the carrier.

The claimant sustained injury to his right knee by accident during his employment on three separate occasions:  June 18, 1997, August 4, 1998, and September 15, 1999.  Although various aspects of the claims for benefits arising from these accidents were considered together by the Commission, this appeal directly involves only the September 1999 accident.

In the employer's First Report of Accident filed for the 1999 incident, the claimant's injury was described: "WALKING DOWN STEEP DRIVEWAY IN RAIN & SLIPPED. FELT RIGHT KNEE POP." In an Award Order dated May 16, 2000, the Commission approved an Agreement to Pay Benefits, and directed the payment of temporary total compensation of "$469.91 weekly, during incapacity," beginning September 16, 1999.

On May 10, 2001, the claimant, by counsel, notified the Commission that "Mr. Washington has not been paid compensation pursuant to the Award Order." Counsel, referring to the provisions of Code § 65.2-524, asked that the carrier be ordered to pay the claimant "all compensation due and payable to him, along with a 20% penalty."

In a letter to the Commission on the next day, May 11, 2001, claimant's counsel wrote: "Please accept this letter as the Claimant's request for additional benefits based on a change in condition . . . The Claimant's doctor removed him from the work force on March 28, 2001." Also, counsel noted that the claimant was "under an open award" and that "[h]e is not receiving benefits."

On June 4, 2001, the carrier filed with the Commission forms stating: "This claim is denied" for the reasons that: "Any disability is unrelated to compensable accident or disease"

2

and "[t]he medical treatment is unrelated to the industrial injury or disease."

On June 7, 2001, the Commission, noting that it had been advised that payments pursuant to the "May 16, 200[0] Award" had not been timely made (the Commission erroneously referred to 2001), entered an order assessing a 20% penalty on all compensation greater than two weeks in arrears to be paid "immediately" along with the compensation owed.

On June 27, 2001, the Commission granted the claimant's request to consolidate for hearing the claims arising from the three accidents and set the hearing for September 4, 2001.

On July 9, 2001, the Commission entered an order requiring the carrier to show cause why it should not be held in contempt for failing to comply with the June 7, 2001 order.

In a July 18, 2001 letter, the carrier, by counsel, acknowledged receipt of the June 7 penalty order and the July 9 show cause order. It stated that its "records reflect that the claimant was paid temporary total disability compensation beginning September 17, 1999 through May 17, 2000 at a rate of $469.[9]1. At that time he obtained a full duty release and returned to his pre-injury employment. It appears that the carrier sent out agreement forms to the claimant which were never returned." Counsel asked "that any decision on whether a

3

penalty is due be deferred until the carrier can obtain the necessary information from the employer."

Responding in a July 23, 2001 letter to the parties, the Commission denied the carrier's request for a continuance of the September hearing date. The Commission also advised the claimant's attorney that the carrier "will soon file an application alleging that the claimant returned to work at his pre-injury wage" and that if such application is filed timely, the Commission "would certainly consider hearing that issue simultaneously with the other pending claims."

In a Notice of Hearing to the parties for the September 4, 2001 hearing in the present claim (arising from the September 1999 accident), the Commission stated the "Subject" of the hearing to be the claimant's request for benefits filed in April 2001, "to be heard with" the claims arising from the accidents of June 1997 and August 1998.

The Commission's reference to the April request was to a change in condition application dated April 6, 2001 seeking benefits, including temporary total disability, beginning March 28, 2001.

Following the typically informal hearing before a deputy commissioner, at which brief, disjointed testimony and comments from counsel were received, the deputy rendered a written

4

opinion on September 27, 2001, which decided matters arising from all three accidents. In a separate section of the opinion, the deputy commissioner set forth the issue in the claim arising from the instant September 1999 accident as follows: "Whether the May 16, 2000, award should be terminated because the claimant was released to return to full duty."

The deputy found a physician "released the claimant to full duty as of June 8, 2000," and concluded that "[a]ny disability suffered by the claimant after that date is causally unrelated to the September 15, 1999, injury." The deputy terminated the May 16, 2000 Award Order, and denied the claimant's April 2001 change in condition application. In the award, the deputy also quashed the show cause order and stated "[t]here is no penalty owing."

In another section of the opinion, which dealt with the August 1998 injury, not the September 1999 injury, the deputy commissioner stated the second issue relating to that claim to be: "Whether the carrier is liable for a 20% penalty for indemnity benefits pursuant to Va. Code 65.2-524 under the May 16, 2000, award of the Commission." Noting that on the date of the hearing the May 2000 award "remained open," the deputy found that the claimant was released "to full duty as of June 8, 2000. . . . Therefore, any disability which the claimant suffered

5

after that date is causally unrelated to the August 4, 1998, injury." Continuing, the deputy ruled: "While the defendants were woefully remiss in not terminating the May 16, 2000, award, the claimant was paid indemnity benefits until he returned to work. The claimant was not owed further benefits, therefore, no penalty is awarded because there were no benefits in arrears."

Upon the claimant's application for review, the full Commission affirmed the deputy's opinion. On review, the Commission rejected the claimant's contention that the only issue properly before the deputy at the September 2001 hearing relating to the 1999 injury was whether a statutory penalty should be assessed against the carrier. Thus, the Commission, noting the deputy correctly ruled on the causal connection issue, determined "the Deputy Commissioner did not err in terminating the claimant's outstanding Award in [the file relating to the September 1999 accident]. Since the claimant is not entitled to compensation benefits after June 8, 2000, no penalty is owed."

Upon further review, the Court of Appeals affirmed the Commission. Washington v. United Parcel Serv. of Am., 39 Va. App. 772, 576 S.E.2d 791 (2003). We awarded the claimant this appeal because the case involves a matter of significant precedential value. See Code § 17.1-410(B).

6

In the Court of Appeals, one of the questions the claimant presented was: "That the Commission erred as a matter of law in considering issues not properly before it and in granting relief not requested by the Defense." However, the Court of Appeals stated: "On appeal, Washington contends only that the commission erred in refusing to grant him benefits under the open May 16, 2000 award and that the commission erred in refusing to assess the 20% penalty against [the carrier] for failing to pay him benefits consistent with the award." Id. at 778, 576 S.E.2d at 794.

Because the Court of Appeals did not directly discuss the claimant's contention regarding just what issues properly were before the deputy commissioner, a contention raised throughout the proceedings below and in this Court, we shall address that question initially.

We hold that the issue of causation was not properly before the deputy, and should not have been decided given the procedural posture of the matter. Although there is some vague reference in the hearing transcript to an off-the-record discussion of "the posture of this case and what issues are properly before the Commission," we have found no concession in the record by the claimant that the causation issue was viable for decision.

7

Indeed, the Notice of Hearing made no mention of the issue, or that the Commission was considering terminating the outstanding award based upon the claimant's change in condition application, see Code § 65.2-708(A) (Commission, upon ground of change in condition, may end compensation previously awarded). In addition, despite the Commission's warning to the claimant's attorney in the July 23, 2001 letter, the carrier did not file an employer's application alleging the claimant returned to work at his pre-injury wage, which would have enabled the deputy, with notice to the claimant, properly to consider the causation issue at the hearing. The carrier only relied upon a doctor's release to defend against Washington's claim, and the Commission relied on that release to deny the claim.

This procedural snafu prevented the claimant from preparing an adequate response on the causation question and from being prepared to resist termination of the award based on his change in condition application. He was not afforded the minimal due process to which he was entitled. This was materially unfair to him and constituted reversible error.

Now, we shall address the only substantive issue properly before the Court, that is, the penalty question. Code § 65.2-524, dealing with payment of workers' compensation, provides, as pertinent, that "[i]f any payment is not paid within two weeks

8

after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty percent thereof. . . ." Commission Rule 1.4(C)(1) requires compensation to be paid through the date an employer's application for a hearing is filed unless "[t]he application alleges the employee returned to work, in which case payment shall be made to the date of the return."

As we have said, the carrier failed to file a change in condition application with the Commission alleging the claimant had returned to work and requesting termination of the May 16, 2000 open award. Rather, the carrier unilaterally terminated payment of benefits after it learned that the claimant had returned to work without restrictions.

In deciding the penalty issue, the Court of Appeals correctly stated that the relevant statutes do not give an employer or carrier the unilateral right to cease paying compensation benefits to a disabled employee under an outstanding award, when that employee returns to work and the employer or carrier does not file an application or agreed statement of facts along with a supplemental memorandum of agreement. Washington, 39 Va. App. at 779, 576 S.E.2d at 794. Indeed, the Court of Appeals noted the "laudable purpose" of the foregoing Commission rule as a method of policing the tendency

9

of employers and carriers to terminate first and litigate later. Id.

Nevertheless, the Court of Appeals excused the carrier's unilateral action. Indicating that it did not "condone" the carrier's failure to file an application to terminate the May 16, 2000 award, the Court of Appeals said that the Commission's equitable power, as exemplified in the doctrine of imposition, includes the power to render decisions based on justice as shown by the total circumstances of each case, even when no fraud, mistake or concealment has been shown. Id. at 780, 576 S.E.2d at 795. The doctrine of imposition grants the Commission "jurisdiction to do full and complete justice in each case." Harris v. Diamond Const. Co., 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946). Accord John Driggs Co. v. Somers, 228 Va. 729, 734, 324 S.E.2d 694, 697 (1985).

Noting the claimant returned to work in June 2000 without physical restrictions, the Court of Appeals stated he was not released from full-duty work again, by a physician, until March 28, 2001. On that date, a physician released him from work for a third arthroscopic surgery, "which the commission found was causally unrelated to the injury upon which the May 16, 2000 award was based." Washington, 39 Va. App. at 780, 576 S.E.2d at 795.

10

Also, the Court of Appeals said there was no evidence that the employer or carrier "intentionally failed to file the appropriate paperwork requesting termination of the award, or that [the carrier] possessed any ill intent in failing to do so." Id. at 780-81, 576 S.E.2d at 795.

Concluding, the Court of Appeals stated: "Therefore, as the commission found that Washington was no longer entitled to benefits under the award after June [8], 2000, we find no error in the commission's determination that no benefits or penalty should be awarded." Id. at 781, 576 S.E.2d at 795.

The Court of Appeals erred. As we already have said, the issue of causal connection should not properly have been before the Court of Appeals because that issue was not properly before the Commission. Without the finding of no causal connection between the September 1999 accident and the claimant's condition after March 28, 2001, there was no basis for the Commission or the Court of Appeals to find, as is implicit in the rulings below, that the claimant would be unjustly enriched because he may have received benefits to which he was not entitled.

Consequently, the May 16, 2000 award of benefits remains valid, and the refusal to assess a 20% penalty was error. The carrier violated the mandate of Code § 65.2-524 because benefits were not paid within two weeks after they became due. And,

11

without a finding of no causal connection, there is no basis to employ the doctrine of imposition.

Therefore, the judgment from which this appeal was taken will be reversed and the case will be remanded to the Court of Appeals. The Court of Appeals shall remand the case to the Workers' Compensation Commission for further proceedings in connection with the claim arising from the September 1999 injury.

Upon remand, the Commission shall enter an award of benefits to the claimant for the period from March 28, 2001 to September 27, 2001 (for the weeks when he was unable to work), as requested by the claimant in this Court, plus an additional 20% of the total amount due for that period of time.

<u>Reversed and remanded</u>.

JUSTICE KEENAN, with whom CHIEF JUSTICE HASSELL joins, dissenting.

I respectfully dissent. The sole assignment of error raised by the claimant in this appeal is: "The Court of Appeals erred in upholding the Commission's ruling that Mr. Washington's release to full-duty status in June 2000 served to terminate the May 2000 award." By restricting his appeal to this single assignment of error, the claimant has, of his own accord, limited the scope of the appeal before this Court.

12

The majority, however, reaches beyond this assigned error to review an additional question not before this Court, namely, whether the deputy commissioner properly considered the issue of causation. Despite the claimant's procedural abandonment of this issue, the majority's holding is predicated on a sua sponte resolution of that question. Thus, I must conclude that the majority has decided this appeal in contravention of Rule 5:17(c), which states in material part: "Only errors assigned in the petition for appeal will be noticed by this Court."

Both the deputy commissioner and the Commission held that the claimant was not entitled to benefits for the period after March 28, 2001, because the claimant's surgery on that date was not related to the September 15, 1999 injury. Not only did the claimant fail to assign error on these grounds in this Court, the claimant also failed to challenge this holding of the Commission in the Court of Appeals. In his "Questions Presented" before the Court of Appeals, the claimant asked, "Did the Commission err as a matter of law in considering issues not properly before it and in granting relief not requested by UPS?" However, in neither his opening brief nor in his reply brief before the Court of Appeals did the claimant argue that the deputy commissioner and the Commission improperly considered the issue of causation. Instead, the claimant merely asserted that

13

the Commission lacked authority to terminate the claimant's benefits in the absence of an application from UPS. Thus, as asserted by UPS before this Court, the Commission's determination that the claimant's March 2001 surgery was not causally related to his compensable injury became the law of this case and is binding on appeal before this Court.

Given this binding determination, an analysis of the issue presented in this appeal must begin with the conceded fact that the complainant was seeking benefits for injuries that were unrelated to the open award of May 2000. Once that concession is placed into the framework of this appeal, the entire appeal collapses.

Examined in this context, the claimant's argument effectively is reduced to an assertion that a penalty should have been imposed on the employer for its failure to make payments that the claimant was not entitled to receive in the first place. Such a contention plainly amounts to no more than a request for unjust enrichment, which the Court of Appeals properly denied.

I agree that the employer was required to file an application under Commission Rule 1.4(C) to terminate the open award upon the claimant's return to work in June 2000. Nevertheless, I would hold that the employer's failure to file

14

that application does not entitle the complainant to receive payment of a penalty, when he was not entitled to the compensation payments on which such penalty would be based. Accordingly, I would further hold that, under the doctrine of imposition, which gives the Commission "jurisdiction to do full and complete justice in each case," Harris v. Diamond Construction Company, 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946), the Commission did not err in declining to impose a penalty on the employer.  On this basis, I would affirm the judgment of the Court of Appeals.