COURT OF APPEALS OF VIRGINIA


Present:    Chief Judge Fitzpatrick, Judge Benton and Senior Judge Coleman
Argued by teleconference


THE UNINSURED EMPLOYER'S FUND

                                                        OPINION BY
v.      Record No. 2782-03-4              JUDGE JAMES W. BENTON, JR.
                                                  SEPTEMBER 7, 2004
GREGORY PETERS


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

        John J. Beall, Jr., Senior Assistant Attorney General (Jerry W.
        Kilgore, Attorney General; Richard L. Walton, Jr., Senior Assistant
        Attorney General, on briefs), for appellant.

        Lawrence J. Pascal (Ashcraft & Gerel, on brief), for appellee.


        The Workers' Compensation Commission suspended Gregory Peters's award of

temporary partial disability benefits effective December 27, 2001 due to his incarceration.  See

Code § 65.2-510.1.  The Uninsured Employer's Fund contends the commission erred in finding

that the Fund's unilateral suspension of Peters's benefits on September 27, 2001 was arbitrary

and erred in levying a penalty of three months of benefits against the Fund.  By cross-appeal,

Peters contends the commission incorrectly suspended his benefits after finding that the Fund

failed to comply with Code § 65.2-510.1 and it improperly and prematurely terminated his

benefits in violation of Rule 1.4(C).  We hold that the commission erred in terminating Peters's

benefits as of December 27, 2001.

                                              I.

        The essential facts are undisputed.  Peters suffered a compensable injury December 21,

1993, which resulted in several awards of benefits.  On September 12, 2001, the commission

entered an award in favor of Peters that required the Fund to pay temporary partial disability

benefits at the weekly rate of $226.27, beginning February 27, 2001 and continuing. By letter dated September 28, 2001, Peters's attorney notified the Fund that he had recently learned Peters was incarcerated and that he had "no other details at this time." Without seeking an order from the commission, the Fund ceased paying Peters his benefits. A later letter from Peters's attorney's office on October 12, 2001 notified the Fund that "Peters advised . . . he was incarcerated on September 27, 2001," that they "anticipate[d] . . . he will be released shortly," and that they will "keep [the Fund] posted."

A senior claims examiner at the commission notified the Fund on June 20, 2002 that the commission's records indicated an award was outstanding and that the commission assumes payments are continuing. The letter also advised that if "payments have ceased, an executed Termination of Wage Loss Award or an Employer's Application for Hearing must be filed to end the award." The record does not reveal any response from the Fund to this letter; however, in October 2002, the Fund and Peters's attorney exchanged correspondence regarding Peters. The Fund sent to Peters's attorney a proposed stipulation to terminate the award, which was not returned by Peters or his attorney. On February 28, 2003, the Fund filed an application for hearing to suspend Peters's benefits, noting that it had paid compensation through September 27, 2001.

The deputy commissioner found that the Fund delayed filing an application for hearing based upon the representation that Peters would be soon released from incarceration and that Peters waited a year and a half before complaining about the suspension of benefits. Based primarily on these factors, the deputy commissioner ruled that "[a] manifest injustice would result . . . [if Peters was] unjustly enriched by the payment of an additional eighteen months of compensation benefits."

The deputy commissioner also found that the Fund "violated the body and spirit of the act" by arbitrarily suspending Peters's benefits without filing an application. Finding that "the policy of Rule 1.4 is overridden by the windfall that will result from its strict application," the deputy commissioner ruled as follows:

> We will order the [Fund] to pay an additional three months of compensation benefits, and suspend the outstanding award as of December 27, 2001. In this manner, we limit the claimant's windfall to three months of benefits. We also punish the [Fund] for its negligence in failing to file a timely application and for its unilateral and arbitrary suspension of benefits by, in effect, imposing a penalty of three months of benefits.

On review, the commission noted that Code § 65.2-510.1 did not give the Fund "the unilateral right to cease paying compensation benefits [due] to a disabled employee under an outstanding award" and also noted that "Rule 1.4(C) operates as a method of policing the 'tendency of employers and insurers to terminate first and litigate later.'" The commission found, however, that Peters would be unjustly enriched by strictly enforcing Rule 1.4(C) and "that the parties reasonably expected [Peters's] award to be suspended due to his incarceration." The commission then ruled as follows:

> [W]e previously recognized that there may . . . be [a] case where it would be appropriate, when applying the equitable concept of imposition, to penalize an employer/carrier for the unilateral action of terminating compensation by requiring the employer/carrier to pay compensation beyond the date that compensation could have been properly terminated if the employer/carrier had filed a timely application. See Merino v. Dittmar Company/Tyson Westpark Hotel, VWC File No. 143-57-63 (1995). We find this to be such a case.
>
> Here, the Fund stopped paying benefits to the claimant immediately after being advised of the claimant's incarceration and before it received more information regarding the nature and duration of the claimant's imprisonment. In its position statement filed for consideration of the Deputy Commissioner, the Fund asserted that it had been "lulled by a suggested early release, and then it was forgotten" -- implying that it intended to wait until receiving more information regarding the claimant's information

- 3 -

before submitting the appropriate documentation to the Commission. However, the Fund had no right to stop paying the claimant compensation until after it had already filed its application, and we agree with the Deputy Commissioner's conclusion that the Fund's decision to immediately terminate benefits was "arbitrary" -- particularly when, as here, counsel for the claimant initially advised the Fund that he did not believe the claimant would be imprisoned for a substantial length of time.

Therefore, we conclude that the Deputy Commissioner did not err by requiring the employer to pay temporary partial disability compensation to the claimant through to December 27, 2001, such benefits to be paid by the Fund with the right to indemnification from the uninsured employer.

Both the Fund and Peters appealed from these rulings.

II.

In pertinent part, Code § 65.2-510.1 provides as follows:

A. Whenever an employee is imprisoned in a jail, state correctional facility, or any other place of incarceration and (i) the imprisonment resulted from the employee's conviction of a criminal offense and followed his sentencing therefor by a court of competent jurisdiction, (ii) the employee is receiving compensation for temporary total incapacity pursuant to § 65.2-500 or temporary partial incapacity under § 65.2-502, and (iii) the employee is medically released to perform selective employment, compensation benefits for wage loss shall be suspended under § 65.2-708 upon filing of a proper application to the Commission.

B. If benefits are suspended for incarceration pursuant to this section and the employee's conviction is subsequently reversed on appeal and no further appeals or prosecutions concerning such prior conviction are had, the employee's benefits shall be restored under § 65.2-708 upon filing of a proper application to the Commission.

Commission Rule 1.4 governs the filing of applications for hearing. It requires, absent certain exceptions not applicable here, that an employer filing an application for a hearing based on a change in condition must pay "[c]ompensation . . . through the date the application was filed." Rule 1.4(C). On numerous occasions, we have noted that the commission enacted Rule 1.4(C) to control the tendency of some employers and insurers to unilaterally terminate awards

- 4 -

and litigate later. See Odin, Inc. v. Price, 23 Va. App. 66, 72, 474 S.E.2d 162, 164 (1996); Specialty Auto Body v. Cook, 14 Va. App. 327, 330, 416 S.E.2d 233, 235 (1992). The object of this salutary rule is to limit that tendency, but the rule also has the secondary effect of protecting the sanctity of the commission's awards.

The general principle is well established that an employee becomes vested with the right to receive workers' compensation benefits under an award in his favor so long as the award remains outstanding. Sargent Electric Company v. Woodall, 228 Va. 419, 425, 323 S.E.2d 102, 105 (1984). Equally well established is the principle that the commission's rules are "binding in law upon the parties and the Commission as well." Id. at 424, 323 S.E.2d at 105. These principles are of long standing and are designed to eliminate unilateral failures to comply with awards.

> The employer and the insurance carrier were charged with knowledge of the rule, and the harsh result here complained of is of their own making. It is brought about by their failure or refusal to make application for a hearing . . . [when] claimant resumed work. . . . Instead of filing for a hearing on the ground of a change of condition they took the matter into their own hands and terminated the compensation payments in the face of the pre-existing award. The rule was adopted to require prompt payment of compensation to all claimants entitled thereto. One of its purposes was to eliminate the result which took place in this case, that is, the arbitrary discontinuance of compensation by the employer and the insurance carrier without legal sanction.

Manchester Bd. & Paper Co. v. Parker, 201 Va. 328, 331-32, 111 S.E.2d 453, 456 (1959).

An example of the application of these principles is found in Woodall, where an employee returned to work for his pre-injury employer at an average weekly wage higher than his pre-injury wage. 228 Va. at 422, 323 S.E.2d at 104. The deputy commissioner ruled that the employer unilaterally terminated the award and, therefore, assessed a penalty against the employer and benefits. Id. at 423, 323 S.E.2d at 104. The employer appealed, "requesting that the award be modified by deleting benefits and penalties for those weeks in which Woodall

earned in excess of his pre-injury average weekly wage." Id. The commission upheld the award "on the ground that the carrier's failure to comply with Rule 13 [the predecessor to Rule 1.4] was the reason the award remained outstanding." Id. at 423, 323 S.E.2d at 104. Affirming the commission's award, the Supreme Court held in Woodall that an employer cannot complain about the harshness of the result of the commission's rules if the employer's failure to follow the rules leads to that result. Id. at 425-26, 323 S.E.2d at 106.

Without reference to these principles, the commission in this case "applied the equitable doctrine of imposition when concluding that [Peters] was not entitled to temporary partial compensation through February 28, 2003 -- the date that the Fund filed its application to suspend [Peters's] outstanding temporary partial award." See Harris v. Diamond Constr. Co., 184 Va. 711, 720, 36 S.E.2d 573, 577 (1946) (holding that the commission has "jurisdiction to do full and complete justice in each case," and, thus, recognizing that "the commission [has] the power and authority not only to make and enforce its awards, but to protect itself and its awards from fraud, imposition and mistake"). The record is undisputed, however, that the Fund unilaterally ceased paying Peters temporary partial disability benefits in contravention of Rule 1.4(C). The commission found that the Fund did so on September 28, 2001 after receiving a letter from Peters's attorney informing it that Peters was incarcerated. Nevertheless, citing several of this Court's opinions, including Washington v. United Parcel Serv. of Am., 39 Va. App. 772, 576 S.E.2d 791 (2003), and Lam v. Kawneer Co., Inc., 38 Va. App. 515, 566 S.E.2d 874 (2002), the commission ruled that Peters would be unjustly enriched because "he no longer suffered a wage loss related to his compensable injury" and that the Fund's failure to comply with the Rule could be excused because "the parties reasonably expected the . . . award to be suspended due to [Peters's] incarceration." We hold that this reasoning and the facts of this case do not support the use of the doctrine of imposition.

The Supreme Court recently reversed our decision in <u>Washington</u> and discussed again the issue of an employer unilaterally terminating benefits. <u>See</u> <u>Washington v. United Parcel Serv. of Am.</u>, 267 Va. 539, 593 S.E.2d 229 (2004). In that case, the employee had filed a "request to assess a 20% penalty against the employer's insurance carrier for its failure to pay the . . . benefits as provided in an open award." <u>Id.</u> at 541, 593 S.E.2d at 230. Addressing the penalty issue, the Court held as follows:

> Code § 65.2-524, dealing with payment of workers' compensation, provides, as pertinent, that "[i]f any payment is not paid within two weeks after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty percent thereof . . . ." Commission Rule 1.4(C)(1) requires compensation to be paid through the date an employer's application for a hearing is filed unless "[t]he application alleges the employee returned to work, in which case payment shall be made to the date of the return."
>
> . . . [T]he carrier failed to file a change in condition application with the Commission alleging the claimant had returned to work and requesting termination of the . . . open award. Rather, the carrier unilaterally terminated payment of benefits after it learned that the claimant had returned to work without restrictions.
>
> . . . [T]he relevant statutes do not give an employer or carrier the unilateral right to cease paying compensation benefits to a disabled employee under an outstanding award, when that employee returns to work and the employer or carrier does not file an application or agreed statement of facts along with a supplemental memorandum of agreement. . . . [T]he "laudable purpose" of the foregoing Commission rule . . . [is] a method of policing the tendency of employers and carriers to terminate first and litigate later.

<u>Id.</u> at 545, 593 S.E.2d at 232 (citations omitted). Holding that the doctrine of imposition was improperly applied, the Court reversed the commission's refusal to assess a 20% penalty and ruled that the award of benefits remained valid. <u>Id.</u> at 546-47, 593 S.E.2d at 233.

Although the commission correctly noted our observation in <u>Lam</u> that "[i]t is 'neither logical, reasonable, nor within the spirit of the Act' to award benefits when a worker is not entitled to them," 38 Va. App. at 518, 566 S.E.2d at 875-76 (citation omitted), we made that

observation in the context of a record which proved the worker "neglected to comply with [a] notice requirement" of the Act and the employer had not "flaunted the Commission's requirements" as prescribed by the rules. Id. at 519, 566 S.E.2d at 876. Recently, in Genesis Health Ventures, Inc. v. Pugh, 42 Va. App. 297, 591 S.E.2d 706 (2004), we explained the rationale for our decision in Lam. In the following passage, we quote extensively from Pugh to reiterate that rationale:

> Notwithstanding its clear violation of the commission's rule, [the employer] contends that our Lam decision required the commission to disregard [the employer's] failure to comply with the rules. We disagree with [the employer's] reading of Lam.
>
> Unlike Pugh, who returned to work for . . . her pre-injury employer, Lam did not return to work for his pre-injury employer. Highlighting the circumstance of Lam's return to work for another employer, we noted that when "the insurer requested [Lam] to provide the name of his current employer, the date he started working, and copies of his pay stubs . . . [, Lam] did not respond." 38 Va. App. at 517, 566 S.E.2d at 875. Lam's failure to respond to the request was a significant factor in the commission's decision for three reasons. First, the employer's "application for [a hearing to] terminat[e] . . . benefits must be based on documentation 'sufficient to support a finding of probable cause to believe [the] . . . grounds for relief are meritorious.'" Id. at 519 n.3, 566 S.E.2d at 876 n.3. Because Lam's employer lacked specific information about where he was employed and his rate of pay, the employer had insufficient documentation to support its application. Second, Lam "did not dispute that he neglected to comply with the notice requirements of § 65.2-712." Lam, 38 Va. App. at 519, 566 S.E.2d at 876. In pertinent part, this statute imposes upon an employee "a duty immediately to disclose to the employer . . . [the employee's] return to work" and authorizes the commission to remedy a breach of that duty. Code § 65.2-712. Third, in Lam the employer sought information from Lam that would have permitted it, had Lam cooperated, to timely file an agreement to terminate the award. Thus, the commission found no evidence to suggest the employer had "flaunted" the rules by its delay. 38 Va. App. at 519, 566 S.E.2d at 876.

Id. at 300, 591 S.E.2d at 707.

As in Pugh, the Fund had sufficient information to support an application for hearing in this case but, instead, unilaterally terminated compensation benefits it was required to pay under an outstanding award contrary to the commission's rules. Similar to the circumstances in Pugh, the Fund also later failed to file an application for hearing after receiving notice from the commission inquiring about the outstanding award. On the other hand, the record contained no evidence that Peters violated any duty required of him by the commission's rules or the Act.

It is true that, if the Fund had complied with the commission's rules after the Fund learned of Peters's incarceration, the compensation payments to Peters could have been properly terminated pursuant to Code § 65.2-510.1. It does not follow from this proposition that the commission could invoke the doctrine of imposition, reasoning "that the parties reasonably expected the . . . award to be suspended due to his incarceration" and that Peters "did not deny that his award was subject to suspension due to his incarceration." Imposition cannot be invoked to reward a party who blatantly contravenes the Act's requirements on the rationale that the outcome would have been the same if the Act's requirements had been followed. The commission's "adoption of . . . rules [for carrying out the provisions of the Act] is a legislative act, and the enactment is binding in law upon the parties and the Commission as well." Woodall, 228 Va. at 424, 323 S.E.2d at 105. Thus, the commission's authority to do full and complete justice must be exercised "[w]ithin the principles established by statutes and rules construing them." Avon Products, Inc. v. Ross, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992). One of the purposes of Rule 1.4 was to eliminate the result which took place in this case, the pattern of terminating benefits and litigating later. See Washington, 267 Va. at 545, 593 S.E.2d at 232; Woodall, 228 Va. at 424, 323 S.E.2d at 104; Manchester Bd. & Paper Co., 201 Va. at 331-32, 111 S.E.2d at 456.

Upon entry of the temporary partial disability award, Peters "became vested with the right to receive compensation benefits so long as the award remained outstanding" and he violated no duty imposed by the commission's rules and the Act. Woodall, 228 Va. at 425, 323 S.E.2d at 105. For these reasons, we hold that the commission improperly invoked the doctrine of imposition to uphold the Fund's unilateral suspension of benefits in violation of Rule 1.4(C). Accordingly, we reverse the commission's ruling that the Fund was only required "to pay temporary partial disability compensation to [Peters] through December 27, 2001," and we remand to the commission for further proceedings.

Reversed and remanded.