COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, Humphreys and Powell
Argued at Richmond, Virginia


CAPITOL MECHANICAL CONTRACTORS, INC. AND
   HARTFORD FIRE INSURANCE COMPANY
                                                   MEMORANDUM OPINION[*] BY
v.        Record No. 0664-08-1                      JUDGE LARRY G. ELDER
                                                     NOVEMBER 25, 2008
DOUGLAS W. JENKINS


             FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

             Patricia C. Arrighi (PennStuart, on brief), for appellants.

             Matthew H. Kraft (Rutter Mills, L.L.P., on brief), for appellee.


        Capitol Mechanical Contractors, Inc. and Hartford Fire Insurance Company (employer)

appeal from a decision of the Workers' Compensation Commission ordering them to pay

benefits and penalties due under an outstanding award for workers' compensation disability

benefits.  On appeal, employer contends the commission erred in 2002 when it rejected some of

the forms submitted by employer to resolve the claim and then entered an ongoing award for

disability benefits based on those forms it did not reject.  Employer contends the entry of an

ongoing award in clear contravention of the parties' request for an award covering a finite period

of disability was an arbitrary and capricious action amenable to correction under the doctrine of

imposition.  We hold the commission did not err.  Thus, we affirm its imposition of penalties and

refusal to set aside the award.

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

The factual findings of the commission are binding on appeal if supported by credible evidence. Tomes v. James City County Fire Dep't, 39 Va. App. 424, 430, 573 S.E.2d 312, 315 (2002). The commission's "conclusions upon conflicting inferences, legitimately drawn from proven facts, are equally binding on appeal." Watkins v. Halco Eng'g, Inc., 225 Va. 97, 101, 300 S.E.2d 761, 763 (1983). Although we are not bound by the commission's legal conclusions, we give great weight to the commission's construction of the Act and of its own rules. Gallahan v. Free Lance Star Publishing Co., 41 Va. App. 694, 698-99, 589 S.E.2d 12, 14-15 (2003); see Henderson v. Cent. Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987) (holding the Act "is highly remedial" and should "be liberally construed to advance its purpose . . . [of compensating employees] for accidental injuries resulting from the hazards of the employment"). "We will not set aside the commission's interpretation of its rules unless that interpretation is arbitrary and capricious." Boyd v. People, Inc., 43 Va. App. 82, 86-87, 596 S.E.2d 100, 102-03 (2004). Agencies act arbitrarily and capriciously when they engage in actions that "are 'willful and unreasonable' and [are] taken 'without consideration or in disregard of facts or law or without determining principle.'" Sch. Bd. of Norfolk v. Wescott, 254 Va. 218, 224, 492 S.E.2d 146, 150 (1997) (quoting Black's Law Dictionary 105 (6th ed. 1990)).

A.

THE COMMISSION'S REJECTION OF THE
TERMINATION OF WAGE LOSS AWARD FORM

Here, the evidence is undisputed that the termination of wage loss award form (the termination form) employer submitted did not include the claimant's pre-injury average weekly wage in the section of the form employer relied upon to provide the basis for terminating the award. Employer contends that the commission's rejection of the form for that reason was based on the erroneous position of "[t]he witnesses from the [c]ommission" that the blank on the

termination form "required the claimant's return to work wage rather than the established pre-injury average weekly wage." Employer contends that, because the pre-injury average weekly wage figure was contained on the agreement to pay benefits form (the agreement form) it submitted simultaneously with the termination form, the commission had that figure and, thus, should have accepted the termination form and entered a closed award reflective of the parties' intent.

Employer's argument misconstrues the record. Commission employee Annette Spearman, who processed the forms at issue, testified as to the reason inclusion of the pre-injury average weekly wage figure in the space on the termination form was important. Spearman explained that completion of this portion of the termination form constituted employer's certification that the claimant was no longer experiencing a wage loss as a result of his industrial injury and, thus, that complete termination of the wage loss award was appropriate. According to Spearman, under established commission policy in effect at that time, the fact that the pre-injury average weekly wage figure was contained on a simultaneously submitted form such as an agreement form was not relevant. Instead, an employer seeking to terminate benefits pursuant to option 1 of the termination form was required to certify the pre-injury average weekly wage on the termination form itself. Commission policy dictated rejection of the termination form if the pre-injury average weekly wage figure was not included in employer's certification. Spearman testified that the commission had "had a lot of cases where both of the forms have come in at the same time and we're not able to accept the termination form," thereby confirming the commission's consistent application of this policy.

The fact that commission employee Deborah Rhodes may have had a different, erroneous belief regarding commission policy concerning that portion of the termination form[1] does not dictate a contrary result. The record contains no indication that Rhodes was the supervisor involved in Spearman's processing of the forms at issue, and it also contains no indication Rhodes had anything to do with the development of the policy at issue. Thus, the record fails to support employer's claim that, but for Rhodes's "mistake" concerning the information required by the termination form, the termination form at issue would have been accepted and a closed rather than open award would have been issued. To the contrary, credible evidence in the record supports the commission's implicit finding that commission policy dictated rejection of the termination form because claimant's pre-injury average weekly wage figure, rather than his average weekly wage upon his return to work, did not appear anywhere within the four corners of that document. Further, the fact that the commission permanently changed the policy approximately one week after Spearman rejected the termination form at issue—at which time Spearman was no longer required to reject a termination form on which the pre-injury average weekly wage had not been noted—does not render arbitrary and capricious the commission's consistent application of the policy prior to that time.[2]

---

[1] Rhodes's testimony tended to indicate she believed the portion of the termination form at issue required an employer to insert the claimant's actual wage upon his return to work, not simply his pre-injury average weekly wage.

[2] In fact, the record in this case showed prior discrepancies in the pre-injury average weekly wage, which provides support for the basis for the commission's policy. In a case in which the record contained two disparate pre-injury average weekly wage figures and the person completing the termination form mistakenly believed the lower figure represented the claimant's pre-injury average weekly wage when, in actuality, it was the higher of the two figures, that individual might erroneously certify that the claimant was no longer experiencing a wage loss. Only by requiring inclusion of the actual pre-injury average weekly wage figure upon which the individual was certifying entitlement to terminate the award might the commission better assure that this assertion was accurate.

- 4 -

B.

THE OPEN AWARD FOR BENEFITS AND THE DOCTRINE OF IMPOSITION

We also hold the commission did not act arbitrarily and capriciously in entering an open award in clear contravention of the intent of the parties for a closed award and that it did not err in concluding it could not now effect the parties' intent by applying the doctrine of imposition to relieve employer of its obligations pursuant to the outstanding award.

As to the first part of this contention, as previously discussed, credible evidence in the record supports the commission's finding that its acceptance of the agreement form and concomitant rejection of the termination form occurred pursuant to established commission policy. We further conclude that the policy in effect at that time was not arbitrary and capricious. Commission employee Annette Spearman testified that the purpose of entering an open award rather than awaiting submission of a corrected termination form so that a closed award could be entered was to benefit claimants who suffered compensable injuries involving wage loss but had not yet received any benefits because no award had yet been entered. Cf. Henderson, 233 Va. at 382, 355 S.E.2d at 599 (holding the Act should be "liberally construed to advance its purpose . . . [of compensating employees] for accidental injuries resulting from the hazards of employment"). Here, the carrier submitted not one but two incomplete forms to the commission, which the commission handled in accordance with established policy. Employer received timely and detailed notice of the commission's rejection of the termination form and entry of an open award pursuant to that policy. Employer had two courses of action available to it in order to assure the parties' intent was achieved—appealing the open award of benefits or submitting a corrected termination form to have the award terminated in a timely fashion.

---

The distinction would have made no practical difference in claimant's case, however, because under either the correct or the erroneous average weekly wage, claimant was entitled to the maximum weekly compensation rate. See Code §§ 65.2-500, -518.

- 5 -

However, employer pursued neither course of action despite repeated notification by the commission.  In light of all these factors, we hold the commission's entry of an open award was not arbitrary and capricious.

We also hold, based on the Supreme Court's decision in Washington v. United Parcel Service of America, 267 Va. 539, 593 S.E.2d 229 (2004), and our subsequent cases interpreting it, that the commission correctly concluded it lacked authority to apply the doctrine of imposition to relieve employer of its obligations pursuant to the award.  In Washington, the claimant injured his right knee on September 15, 1999, the third right knee injury he had suffered while working for the employer, and the employer accepted the 1999 knee injury as compensable.  Id. at 541, 593 S.E.2d at 230.  The parties submitted an agreement to pay benefits form, and the commission entered an open award based on that submission.  Id.  Sometime after entry of the open award, Washington returned to his pre-injury employment earning an amount equal to or greater than his pre-injury wage.  Id. at 542-43, 593 S.E.2d at 230-31.  Upon Washington's return to work, the employer ceased paying disability benefits, but it never submitted a termination form to the commission, and the open award remained in effect.  Id.  When Washington again became temporarily and totally disabled due to problems with his right knee about nine months later, his attorney notified the commission that "[he] was 'under an open award' [but] that 'he [was] not receiving benefits,'" and he requested that employer be ordered to pay a 20% penalty in addition to all compensation due.  Id. at 541-42, 593 S.E.2d at 230.  The employer countered that it had paid benefits through May 17, 2000, at which time Washington had been released to full-duty employment, and that it had "'sent out agreement forms to the claimant [to terminate the award] that were never returned.'"  Id. at 542, 593 S.E.2d at 230.  It also contended Washington's latest disability was not causally related to his 1999 injury.  Id. at 541, 593 S.E.2d at 230.

The deputy ruled that "'[w]hile [the employer and carrier] were woefully remiss in not terminating the May 16, 2000, award, [Washington] was paid indemnity benefits until he returned to work. [Washington] was not owed further benefits[;] therefore, no penalty is awarded because there were no benefits in arrears.'" Id. at 543, 593 S.E.2d at 231. The deputy also ruled that Washington's disability after June 8, 2000, was unrelated to his 1998 industrial right knee injury, as well. Id. The commission affirmed. Id. at 544, 593 S.E.2d at 231.

We also affirmed, indicating that although "[we] did not 'condone' the carrier's failure to file an application to terminate the May 16, 2000 award,'" the commission's equitable power under the doctrine of imposition permitted it to relieve the employer of the obligations and penalties due under the outstanding award. Id. at 545-46, 593 S.E.2d at 232. We noted "there was no evidence that the employer or carrier 'intentionally failed to file the appropriate paperwork requesting termination of the award, or that [the carrier] possessed any ill intent in failing to do so.'" Id. at 546, 593 S.E.2d at 233 (quoting Washington v. United Parcel Service, 39 Va. App. 772, 780-81, 576 S.E.2d 791, 795 (2003)).

The Supreme Court concluded, by a vote of five to two, that our decision was erroneous. Id. at 544, 546, 593 S.E.2d at 232, 233. The majority first considered what issues were properly before the deputy and concluded the carrier never placed before the commission the issue of whether Washington's disability from March 28, 2001 forward was causally related to his compensable 1999 injury. Id. at 544-45, 593 S.E.2d at 232. The majority then considered the penalty question, holding that absent a finding of no causal connection, "there was no basis for the Commission or the Court of Appeals to find, as is implicit in the rulings below, that the claimant would be unjustly enriched because he may have received benefits to which he was not entitled," when he returned to work at his pre-injury wage while still under the open award. Id. at 546, 593 S.E.2d at 233. It also found "no basis to employ the doctrine of imposition" on the

facts of that case. Id. at 546-47, 593 S.E.2d at 233. It noted the carrier never submitted

"'agreement forms'" indicating that the claimant had returned to work at his pre-injury wage and

never "file[d] an employer's application" seeking to terminate the award based on such a return.

Id. at 542, 545, 593 S.E.2d at 231, 232. Thus, it concluded that "the May 16, 2000 award of

benefits remains valid" and that "the refusal to assess a 20% penalty was error." Id. at 546, 593

S.E.2d at 233.

We applied the Supreme Court's holding in Washington in Uninsured Employer's Fund

v. Peters, 43 Va. App. 731, 601 S.E.2d 687 (2004), concluding the commission erred in applying

the doctrine of imposition to refuse to award a 20% penalty when the Uninsured Employer's

Fund unilaterally ceased paying benefits due under an open award upon learning claimant Peters

was incarcerated. Id. at 736, 739-41, 601 S.E.2d at 690, 691-92 (quoting Code § 65.2-510.1,

which permits suspension of benefits during incarceration "'upon filing of a proper application to

the Commission'"). We also noted the "well established" "general principle" "that an employee

becomes vested with the right to receive workers' compensation benefits under an award in his

favor so long as the award remains outstanding." Id. at 736, 601 S.E.2d at 690. We

acknowledged our prior "observation . . . that 'it is "neither logical, reasonable, nor within the

spirit of the Act" to award benefits when a worker is not entitled to them,'" id. at 739, 601 S.E.2d

at 691-92 (quoting Lam v. Kawneer Co., 38 Va. App. 515, 518, 566 S.E.2d 874, 875-76 (2002)

(citation omitted)), but we noted "we made that observation in the context of a record which

proved *the worker* 'neglected to comply with [a] notice requirement' of the Act and *the employer*

had not 'flaunted the Commission's requirements' as prescribed by the rules," id. at 739, 601

S.E.2d at 692 (emphases added). We summarized our holding as follows:

> Imposition cannot be invoked to reward a party who blatantly
> contravenes the Act's requirements on the rationale that the
> outcome would have been the same if the Act's requirements had
> been followed. . . . Thus, the commission's authority to do full and

complete justice must be exercised "within the principles established by statutes and rules construing them." Avon Products, Inc. v. Ross, 14 Va. App. 1, 7, 415 S.E.2d 225, 228 (1992). . . .

Upon entry of the temporary partial disability award, Peters "became vested with the right to receive compensation benefits so long as the award remained outstanding[,]" and he violated no duty imposed by the commission's rules and the Act. [Sargent Elec. Co. v.] Woodall, 228 Va. [419,] 425, 323 S.E.2d [102,] 105 [(1984)]. For these reasons, we hold that the commission improperly invoked the doctrine of imposition to uphold the Fund's unilateral suspension of benefits in violation of Rule 1.4(C).

Id. at 741-42, 601 S.E.2d at 692-93.

We addressed a related factual scenario in The Washington Post v. Fox, 49 Va. App. 692, 644 S.E.2d 105 (2007). The employer accepted Fox's claim as compensable, and the commission entered first an open award for temporary total disability benefits and then, later, an open award for temporary partial disability benefits. Id. at 694, 644 S.E.2d at 105. When the claimant returned to work with employer in a full-duty capacity at a wage equal to or greater than his pre-injury wage, the employer unilaterally ceased paying benefits "without filing the appropriate paperwork with the commission." Id. at 694-95, 644 S.E.2d at 106.

Twice prior to the employer's unilateral cessation of payments, the commission sent the employer's adjuster its standard letter stating as follows: "Our records indicate an outstanding award in this case. The Commission assumes that payments are continuing pursuant to the award. If payments have ceased, an executed Agreed Statement of Fact or an Employer's Application for Hearing must be filed to end the award." Id. at 695, 644 S.E.2d at 106. Between 1996 and 2003, after the employer's unilateral cessation of payments upon the claimant's return to work at a wage equal to or greater than his pre-injury wage, the commission sent the employer's insurance adjusting service an additional seven letters containing the same or similar information, but employer's adjuster failed to file the forms necessary to have the award terminated. Id. at 695-96, 644 S.E.2d at 106-07.

- 9 -

In 2004, the commission notified the employer's insurance adjusting company "that claimant 'has received the maximum 500 weeks of compensation benefits'" and asked the employer to "advise [it] in writing of the total amount of compensation paid." Id. at 696, 644 S.E.2d at 107. When neither the employer nor the adjuster responded, the commission contacted the claimant and "suggested that [he] review his records to determine if all compensation due had been paid by employer." Id. The employer filed an application to terminate the award, but the commission rejected the application because no open award existed at that time. Id. The claimant then filed an application alleging the employer had underpaid him because it had ceased making temporary partial disability payments on April 13, 1996, when the claimant ceased to experience a wage loss, even though the award remained outstanding until October 1, 2001. Id. The claimant also sought interest and a 20% penalty. Id. at 698, 644 S.E.2d at 107.

The deputy "declined to award back benefits and assess interest and a penalty," finding that to do so "would unjustly enrich [the] claimant." Id. at 698, 644 S.E.2d at 108. The commission ruled the holding in Washington dictated a contrary result, and we agreed. Id. at 698-99, 703, 644 S.E.2d at 108, 110. We also relied on our language in Peters that the claimant's right to compensation due under the open award became vested, and we held

> no legal authority supports [the] employer's argument that, under the facts of this case, it should be excused from the consequences of its decision to unilaterally stop paying [the] claimant compensation benefits due under the March 19, 1993 outstanding award, when he returned to work with employer in April 1996, without filing the appropriate paperwork or an employer's application with the commission to terminate that award.

Id. at 700, 644 S.E.2d at 109. We cited the commission's repeated notifications to the employer that the award remained outstanding and the employer's repeated failure to take appropriate action. Id.

Employer contends the facts of the instant case are distinguishable from <u>Washington</u> and its progeny, in which the parties agreed to an open award of benefits and the commission issued such an award in keeping with the intent of the parties. In each of those cases, the employer terminated benefits months or years after requesting entry of an open award when the claimant was no longer experiencing a compensable wage loss. Here, emphasizes employer, claimant's period of wage loss was already complete when the parties entered into their agreement, and they submitted an agreement form and a termination form simultaneously, exhibiting the parties' clear intent to obtain entry of an award covering a finite period of benefits.

On the facts of this case, as found by the commission, we hold this factual distinction lacks legal significance. Although employer submitted a termination form with the agreement to pay benefits form, the termination form was incomplete, and pursuant to the commission's policy in effect at that time—a policy the evidence establishes was uniformly applied and that we have held was not arbitrary and capricious—the commission rejected that termination form and promptly notified employer of that rejection. Thereafter, despite repeated notifications like in <u>Fox</u>, employer took no action whatever to seek termination of the open award. On these facts, we conclude the holding in <u>Washington</u> applies and, thus, that the commission properly concluded the doctrine of imposition was not available to relieve employer of its obligation to pay benefits and penalties due under the 2002 award.

## II.

For these reasons, we hold the commission did not err. Thus, we affirm its imposition of penalties and refusal to set aside the award.

<u>Affirmed.</u>