COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Fitzpatrick
Argued at Richmond, Virginia


THE WASHINGTON POST

v.       Record No. 1974-06-4

THOMAS L. FOX, JR.

OPINION BY
JUDGE JOHANNA L. FITZPATRICK
MAY 8, 2007


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

William H. Schladt (Ward & Klein, Chartered, on brief), for
appellant.

Andrew S. Kasmer for appellee.


The Washington Post (employer) appeals a decision of the Workers' Compensation

Commission ordering it to pay compensation owed to Thomas L. Fox, Jr. (claimant) through

October 1, 2001, pursuant to the commission's March 19, 1993 award, and assessing a twenty

percent penalty on unpaid compensation pursuant to Code § 65.2-524.  Employer contends the

commission erred in (1) determining that employer was required to pay accrued benefits under

an award after claimant returned to full-duty work for employer at a wage equal to or greater

than his pre-injury wage; and (2) assessing a twenty percent penalty on accrued benefits under an

award where claimant did not suffer any wage loss.  Finding no error, we affirm.

Background

On March 3, 1992, while working for employer as a journeyman mailer, claimant

sustained a herniated disc.  Employer accepted the claim as compensable, and filed the

appropriate paperwork with the commission for it to enter an award.  On October 19, 1992, the

commission entered an award providing claimant temporary total disability (TTD) benefits at the

compensation rate of $418 weekly from March 2, 1992 through March 6, 1992 and TTD benefits at the same compensation rate from March 8, 1992 and continuing, along with medical benefits for as long as necessary.

On March 19, 1993, the commission entered a supplemental award pursuant to a Supplemental Memorandum of Agreement filed by employer, awarding claimant temporary partial disability (TPD) benefits at the compensation rate of $355.18 weekly beginning January 16, 1993 and continuing, as well as medical benefits for as long as necessary.

It is undisputed that as of April 14, 1996, claimant returned to work with employer in a full-duty capacity at a wage equal to or greater than his pre-injury average weekly wage and that employer paid compensation benefits, due under the March 19, 1993 award, to claimant through April 13, 1996. On April 14, 1996, without filing the appropriate paperwork with the commission, employer unilaterally ceased paying compensation benefits to claimant. Claimant denied receiving an Agreed Statement of Fact or any other paperwork from employer when he returned to full-duty or thereafter.

In a "Request for Information" dated March 24, 1993, sent to employer, the commission asked employer to verify that it had corrected an underpayment to claimant for the period from March 8, 1992 through January 15, 1993. Continental Loss Adjusting Service ("Continental")[1] replied to the commission on April 9, 1993, indicating that it had corrected the underpayment.

In a letter dated December 16, 1993 from Betsy J. Anderson, an Assistant Claims Examiner for the commission, to Continental, the commission notified employer's adjuster as follows:

> Our records indicate an outstanding award in this case. The Commission assumes that payments are continuing pursuant to the award. If payments have ceased, an executed Agreed Statement of

_____

[1] Employer is self-insured.

- 2 -

> Fact or an Employer's Application for Hearing must be filed to end the award.
>
> Any recent medical reports should also be promptly filed with the Commission.

Neither the adjuster nor employer responded to the commission.

Letters dated December 15, 1994 and December 18, 1996, with the exact same content as the December 16, 1993 letter, were sent by the commission to employer's insurance adjusting service.[2] Neither the adjuster nor employer responded to the December 15, 1994 letter. In a letter dated January 2, 1997, Dorothy Fritz, a Gallagher claims representative, wrote to the commission indicating that she had received the commission's December 18, 1996 letter. Fritz requested that the commission send her copies of all awards in the case so that she could file the proper forms.

In a letter dated December 30, 1997 to Fritz, Anderson indicated that the January 2, 1997 letter had been brought to her attention. Anderson enclosed copies of all awards and agreement forms. Anderson specifically noted "the employee remains under an outstanding temporary partial disability award dated March 19, 1993."

In letters dated January 5, 1998, January 6, 1999, and June 7, 2000, from Anderson to Gallagher, the commission again notified employer through its insurance adjuster that claimant remained under an open award, that the commission assumed payments were continuing pursuant to that award, and if they had ceased, appropriate agreement forms or an employer's application must be filed to end the award.

By letter dated August 1, 2000, Tracey Probst, a claims adjuster for Gallagher, responded to the commission's June 7, 2000 letter. Probst indicated that Gallagher's office was in the

---

[2] The December 18, 1996 letter was sent to Gallagher Bassett Services, Inc. ("Gallagher"), which had recently taken over handling of the claim for employer.

process of relocating, and as soon as they obtained the physical file, the matter would be addressed.

In letters dated December 21, 2001 and January 2, 2003, the commission again notified employer through Gallagher that claimant remained under an open award, that the commission assumed payments were continuing pursuant to that award, and if they had ceased, appropriate agreement forms or an employer's application must be filed to end the award. Neither the adjusting company nor employer responded to those letters.

In a letter dated July 26, 2004, the commission notified employer through Gallagher that claimant "has now received the maximum 500 weeks of compensation benefits. In order that our records may be complete, advise us in writing of the total amount of compensation paid in this case." Neither Gallagher nor employer responded. By letter dated August 27, 2004, the commission asked for a prompt response to its July 26, 2004 letter. On September 7, 2004, the commission received a memo from Gallagher indicating that the total compensation paid on the claim was $62,319.39. The commission terminated the award, but pursuant to a preliminary audit found that employer had underpaid benefits due under the March 19, 1993 award in the amount of $99,442.83. By notice dated September 27, 2004, the commission requested that employer verify that it had corrected the underpayment. Neither employer nor its adjuster responded to the commission. On December 10, 2004, the commission notified employer, Gallagher, and claimant of the results of its preliminary audit and suggested that claimant review his records to determine if all compensation due had been paid by employer.

On April 4, 2005, approximately nine years after employer unilaterally ceased paying compensation benefits to claimant under the March 19, 1993 award, employer filed an application with the commission to terminate that award on the ground that claimant returned to full-duty work on April 14, 1996, at a wage equal to or greater than his pre-injury average

weekly wage.  The commission rejected employer's application because no open award existed at that time.  Five hundred weeks of compensation under the March 19, 1993 award expired on October 1, 2001, and the commission had terminated the award on September 7, 2004.[3]

On April 20, 2005, claimant filed an application alleging employer had underpaid him by not providing him TPD benefits in the weekly amount of $355.18 under the March 19, 1993 open award from April 13, 1996 through October 1, 2001.  Claimant also sought interest and a twenty percent penalty on all unpaid compensation.[4]

The deputy commissioner conducted an evidentiary hearing on claimant's application on January 11, 2006 and declined to award back benefits and assess interest and a penalty.  The deputy commissioner concluded that such an award would unjustly enrich claimant.  The full commission reversed the deputy commissioner's decision and ordered employer to bring all compensation under the March 19, 1993 award current through October 1, 2001, including a twenty percent penalty on unpaid compensation.  The commission reasoned as follows:

> [T]he only issue before the Commission was whether the carrier should be ordered to bring compensation under the award up to date and to assess a penalty on unpaid benefits.  The deputy commissioner's finding that the claimant suffered no lost wages because of a return to pre-injury work, and thus that an award would be inappropriate, was error.  Moreover, the finding that an order requiring payment of compensation would result in unjust enrichment, because of compensation received for other injuries, concerned an issue not properly before the Commission, and under the clear instruction of the Court in Washington [v. United Parcel

---

[3] We note that neither the commission's record nor the appendix filed in this appeal contain employer's April 4, 2005 application or any document showing the commission's rejection of that application.  However, the parties do not dispute that employer filed the April 4, 2005 application and that the commission rejected it.  In addition, the commission's July 27, 2006 opinion refers to employer's April 4, 2005 application and its rejection.  Accordingly, we conclude that the omission of those documents does not prevent us from disposing of this case on appeal, where the commission's opinion adjudicated claimant's April 20, 2005 application.

[4] Code § 65.2-524 provides that "[i]f any payment is not paid within two weeks after it becomes due, there shall be added to such unpaid compensation an amount equal to twenty percent thereof, unless" certain conditions apply, which are not applicable to this case.

Serv. of America, 267 Va. 539, 593 S.E.2d 229 (2004)], should not have been addressed.

Thus, a final order awarding benefits to the claimant was in place, and there was no dispute that it was not satisfied. There was no subsequent order modifying the existing order, see Code § 65.2-708, and there was no request by the employer to modify the existing order. Accordingly, under Code § 65.2-524, a 20% penalty is owed on "such unpaid compensation."

The only distinguishing fact, when applying the Washington decision, was that here the Award had ended because of the expiration of the 500-week maximum benefit period, whereas in Washington, the award was still "open." Importantly, however, there was no dispute here that the Award, during the period April 14, 1996, to October 1, 2001, was "open," in that it was never modified, suspended, or terminated. Thus, it continued to be "conclusive and binding" on the issue of the payment of benefits. Code § 65.2-524 requires the payment of a 20% penalty on unpaid compensation, and here it was not disputed that accrued benefits under the Award were unpaid. The "closing" of the Award upon the expiration of the 500-week maximum benefit period did not affect the character of the Award before the running of that period.

Employer appeals the commission's decision.

Analysis

Code § 65.2-708 provides in its pertinent part as follows: "No . . . review [on the ground of a change in condition] shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title, except . . . [under certain circumstances inapplicable to this case]." The commission's Rule 1.4(C) requires an employer to continue paying benefits due under an open award through the date it files a change-in-condition application. If the application alleges the employee returned to work, payment must be made to the date of the return. Id. However, "[n]o change in condition application under § 65.2-708 . . . shall be accepted unless filed within two years from the date compensation was last paid pursuant to an award." Rule 1.4(E).

- 6 -

It is undisputed that employer stopped paying claimant compensation benefits under the then outstanding March 19, 1993 award, when he returned to full-duty work for employer on April 14, 1996. In addition, it is undisputed that employer did not file appropriate paperwork or an application to terminate the March 19, 1993 award until April 4, 2005, well outside the two-year period provided for doing so under Code § 65.2-708, and in violation of Rule 1.4. This lack of diligence spanned a nine-year period of time and at least seven requests by the commission for a response to its notifications that an award was outstanding. Thus, the commission properly rejected employer's April 4, 2005 change-in-condition application.[5]

Employer erroneously asserts that "[c]laimant's right to receive worker's compensation benefits terminated upon his returning to his pre-injury employment." That statement is contrary to the provisions of the Act and the commission's rules and completely ignores employer's obligation in this case to comply with Code § 65.2-708 and Rule 1.4. Moreover, no legal authority supports employer's argument that, under the facts of this case, it should be excused from the consequences of its decision to unilaterally stop paying claimant compensation benefits due under the March 19, 1993 outstanding award, when he returned to work with employer in April 1996, without filing the appropriate paperwork or an employer's application with the commission to terminate that award.

As of April 14, 1996, employer knew that claimant had returned to full-duty work for employer at a wage equal to or greater than his pre-injury average weekly wage. Between December 1993 and June 2000, employer and/or its insurance adjusting company received seven notifications from the commission that an open award remained outstanding. The commission provided the same notification to employer and/or its insurance adjusting company in 2001 and

_____

[5] We note that employer did not appeal the rejection of its application to the full commission.

- 7 -

2003. Yet, despite these repeated notices from the commission, employer took no action to file the appropriate paperwork or an employer's application with the commission to terminate claimant's open award. Rather, it unilaterally ceased paying him benefits, which were due and owed under that award. Finally, approximately nine years after employer stopped paying claimant the benefits he was owed under the March 19, 1993 award, employer, on April 4, 2005, filed an application to terminate that award. Employer provided no excuse whatsoever for its failure to comply with the Act's requirements and commission's Rule 1.4(C). Furthermore, no evidence showed that claimant violated any duty owed by him under the commission's rules or the Act. Thus, no grounds exist in this case to apply equity.

The equitable doctrines set forth in Lam v. Kawneer Co., Inc., 38 Va. App. 515, 518-20, 566 S.E.2d 874, 875-76 (2002), are inapplicable to a situation, such as this, where an employer simply ignores the law and fails to file the appropriate forms.

> [T]he relevant statutes do not give an employer or carrier the unilateral right to cease paying compensation benefits to a disabled employee under an outstanding award when that employee returns to work and the employer or carrier does not file an application or agreed statement of facts along with a supplemental memorandum of agreement.

Washington, 267 Va. at 545, 593 S.E.2d at 232. See also Genesis Health Ventures, Inc. v. Pugh, 42 Va. App. 297, 300-01, 591 S.E.2d 706, 707-08 (2004) (finding Lam equitable principles inapplicable where commission sent two letters to employer notifying it of open award and its obligation to file appropriate paperwork, and employer took no action within two years of unilaterally ceasing payment of benefits to claimant when he returned to work with employer).

In Lam, unlike this case, Lam returned to work for an employer different from his pre-injury employer, and he failed to provide Kawneer or the commission with information regarding his new employment status, even though Kawneer requested such information. Lam, 38 Va. App. at 519, 566 S.E.2d at 876. Lam "did not dispute that he neglected to comply with

- 8 -

the notice requirements of Code § 65.2-712." Id. Here, claimant did not fail to perform any acts required of him by the Act or the commission's rules, and because he returned to work for employer, it had full knowledge of the date of such return and the wages he earned. Here, unlike Lam, employer had sufficient information to file appropriate paperwork with the commission to terminate the award or to file an employer's application, but ignored the commission's inquiries, took no action, and instead, unilaterally ceased paying claimant benefits due and owed under the March 19, 1993 award in violation of the Act and the commission's rules.

Employer contended during oral argument that the remand language included by the Supreme Court in Washington limited its holding. Employer argued that language indicated that, under circumstances similar to this case where an employer unilaterally ceased paying benefits under an open award, a claimant would only be entitled to payment of benefits for periods when he was actually not working, rather than for the entire period of time the employer failed to pay benefits due under the open award. We disagree.

In Washington, the Supreme Court specifically stated the only issue properly before it was whether this Court erred in affirming the commission's denial of Washington's request for it to assess a twenty percent penalty against the employer's insurance carrier for its failure to pay him benefits under an open award. Id. at 541, 545, 593 S.E.2d at 230, 232. Similar to the facts of this case, the employer in Washington unilaterally ceased paying benefits to the claimant when he returned to full-duty pre-injury employment without filing the appropriate paperwork with the commission. Id. at 542, 593 S.E.2d at 230. Under those circumstances, the Supreme Court held that the open award remained valid and employer was responsible for a twenty percent penalty on benefits that were not paid within two weeks after they were due. Id. at 546, 593 S.E.2d at 233. In its remand instructions to this Court and the commission, the Supreme Court in Washington first remanded the case "for further proceedings in connection with the

- 9 -

claim arising from the September 1999 injury, [the injury which was the subject of the valid May 16, 2000 open award]," id. at 547, 593 S.E.2d at 233, and then instructed the commission upon remand to enter an award for additional benefits sought by Washington in his separate change-in-condition application related to a period of time that he was again medically unable to work, plus an additional twenty percent penalty. Id. Thus, we find nothing to distinguish the Supreme Court's underlying holding in Washington related to the validity of the open award and the assessment of the penalty from this case.

In addition, the principles set forth below espoused by this Court in Uninsured Employer's Fund v. Peters, 43 Va. App. 731, 601 S.E.2d 687 (2004), are equally pertinent to this case.

> The general principle is well established that an employee becomes vested with the right to receive workers' compensation benefits under an award in his favor so long as the award remains outstanding. Equally well established is the principle that the commission's rules are "binding in law upon the parties and the Commission as well." These principles are of long standing and are designed to eliminate unilateral failures to comply with awards.

> The employer and the insurance carrier were charged with knowledge of the rule, and the harsh result here complained of is of their own making. It is brought about by their failure or refusal to make application for a hearing . . . [when] claimant resumed work . . . . Instead of filing for a hearing on the ground of a change of condition they took the matter into their own hands and terminated the compensation payments in the face of the pre-existing award. The rule was adopted to require prompt payment of compensation to all claimants entitled thereto. One of its purposes was to eliminate the result which took place in this case, that is, the arbitrary discontinuance of compensation by the employer and the insurance carrier without legal sanction.

Id. at 736-37, 601 S.E.2d at 690 (citations omitted).

For these reasons, we affirm the commission's decision.

Affirmed.