COURT OF APPEALS OF VIRGINIA


Present:   Judges Elder, McClanahan and Haley
Argued at Richmond, Virginia


NICOLASA A. DIAZ
                                                        OPINION BY
v.       Record No. 1846-09-2            JUDGE LARRY G. ELDER
                                                        APRIL 20, 2010

WILDERNESS RESORT ASSOCIATION AND
  LIBERTY MUTUAL INSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              Wesley G. Marshall (Law Offices of Wesley G. Marshall PLC, on
              briefs), for appellant.

              Christopher R. Costabile (Law Offices of Christopher R. Costabile,
              on brief), for appellees.


          Nicolasa A. Diaz (claimant) appeals from a decision of the Workers' Compensation

Commission terminating the obligation of Wilderness Resort Association and Liberty Mutual

Insurance Company (hereinafter collectively employer except where otherwise noted) to pay her

temporary disability benefits pursuant to an award and declining claimant's request for penalties

and interest based on what she contends was employer's late payment of those benefits.  On

appeal, claimant contends the commission erroneously concluded that the application was

properly docketed, that employer and carrier properly paid all compensation due pursuant to the

award, and that claimant was not entitled to statutory penalties or interest.  We hold the record

supports the commission's conclusion that employer's hearing application was properly

docketed.  We also hold the commission erred in concluding that the wages employer paid

claimant constituted compensation for purposes of determining whether all compensation due

under the award had been paid and whether employer and carrier owed penalties and interest.

Finally, we conclude the commission erred in not awarding (a) penalties on all late paid compensation and (b) interest on compensation delayed during the pendency of this appeal. Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

I.

BACKGROUND

On February 23, 2000, while working as a housekeeper for employer, claimant sustained a compensable injury to her back. Employer paid benefits for various periods of disability, and in 2003, following a dispute about claimant's entitlement to additional benefits, the commission entered an award for temporary total disability benefits commencing July 19, 2003, and continuing. Claimant returned to light-duty work with employer on August 1, 2004, at which time she was paid a gross weekly wage of $415.20 or higher, which was greater than her gross pre-injury average weekly wage of $310.93. Employer notified the carrier that claimant had returned to work, and the carrier ceased its payments of disability compensation.

Later that month, the commission sent its standard letter to the carrier indicating its records reflected an outstanding award and notifying the carrier that if payments had been terminated, it was required to file an executed termination of wage loss award form or an employer's application for hearing to end the award. The carrier responded that claimant had returned to work at a wage greater than her pre-injury wage and indicated that, although it had provided claimant with an agreement to pay benefits form and a termination of wage loss award form on two occasions, she had not signed the forms.

By letter dated November 19, 2004, the commission notified the carrier it "ha[d] been advised that because of difficulties in obtaining an executed Termination of Wage Loss Award, [it] ha[d] unilaterally terminated [claimant's] compensation benefits." The commission directed

- 2 -

employer "to submit evidence that benefits have been reinstated or a basis upon which benefits may be suspended" within two weeks. Employer thereafter submitted properly executed termination of wage loss award forms covering six different periods of temporary partial and total disability, including not only the period for which the award was outstanding but also for several one- to three-day periods during 2002.

By notice dated April 20, 2005, the commission notified the carrier that it was required to file additional forms before the commission could enter the requested orders. By letter dated June 5, 2005, the commission again notified the carrier that it required additional forms to terminate the outstanding award and it explained with specificity what forms were needed. It emphasized that "[u]ntil the proper agreements are received the outstanding award is in effect."

Employer apparently took no additional action to submit the requested paperwork, and by letter of December 5, 2005, claimant's attorney sought full compliance with the ongoing award and a twenty percent penalty for non-compliance. Claimant also sought compliance with the outstanding medical award and temporary total disability for several additional one- to three-day periods of disability in 2005. The commission issued a show cause order commanding the carrier to appear before the commission. The carrier filed an affidavit indicating it had authorized payment for thirteen days of temporary total disability benefits and payment of a twenty percent penalty, as well. The commission entered an order on February 27, 2006, dismissing the show cause.

On March 2, 2006, the commission again sent the carrier its standard form letter indicating the award remained outstanding and that it assumed payments under the award were continuing. By letter dated May 3, 2006, claimant's attorney forwarded employer's attorney a supplemental agreement to pay benefits form, executed by claimant, for one of the periods for which the commission had indicated it still required such documentation, and claimant's counsel

- 3 -

asked the carrier to forward the appropriate form to the commission, which it appears the carrier never did.

On March 1, 2007, the commission yet again sent the carrier its standard form letter indicating an award was outstanding and that it assumed payments under the award were continuing.

By letter to the commission dated June 23, 2008, claimant's attorney renewed his request for entry of an order requiring employer to comply with the outstanding award and for assessment of a twenty percent penalty on all compensation more than 14 days past due. Claimant's attorney indicated that if employer disputed its obligation to pay compensation or penalties, claimant desired an evidentiary determination or entry of an order to show cause.

Employer and carrier responded by filing an employer's application for hearing form dated July 8, 2008. That application, completed by the carrier's attorney, alleged claimant had returned to light-duty work on August 1, 2004, at her pre-injury average weekly wage. Although the carrier had earlier terminated claimant's temporary total disability compensation payments upon her return to work in 2004, the carrier indicated that in conjunction with filing the 2008 application for hearing, it made a lump sum payment to claimant for temporary total disability at the rate of $207.28 due under the award for the period from her return to work on August 1, 2004, through July 8, 2006, two years prior to the date on which it completed the application for hearing form. The application also requested "credit for overpayment of benefits" for that same

period. The carrier issued claimant a check for $20,551.90, which indicated it was disability compensation for the relevant time period[1] at the lower rate of $206.68.[2]

Claimant's attorney opposed employer's application for hearing, alleging, *inter alia*, that the check should instead have been for $20,935.28. The commission's dispute resolution department determined that the carrier's application was supported by probable cause and referred it to the hearing docket. Employer defended on the ground "that the employer was paying [wages] at or above the comp rate for all days except when the claimant was out of work and that the payments were therefore not late." Employer also offered evidence of the temporary total disability compensation payments the carrier made to claimant in the course of the 2006 show cause proceeding for twelve dates in 2005, and claimant stipulated that employer made payments to her on February 23, 2006, totaling $354.36.[3] Finally, employer offered wage evidence showing claimant returned to light-duty employment with it in 2004 and that she had remained employed by employer since that time, earning more than her pre-injury average weekly wage every week during that period.

In a written decision dated December 22, 2008, the deputy held as follows:

> When the employer filed its application [for hearing] on July 8, 2008, it was required by Rule 1.4(C) to pay benefits through the alleged date of return to work [on August 1, 2004]. Rule 1.4(E) [further] provides that no change in condition may be considered unless filed "within two years from the date compensation was last paid pursuant to an award." In an effort to comply with this section, the employer paid the claimant $20,551.90 for temporary

---

[1] The check indicated it was for compensation through "07/08/08," but the parties agreed the date indicated should have been 2006 rather than 2008.

[2] Claimant was initially paid temporary total disability compensation at the rate of $206.68 under a July 18, 2002 award. In 2003, however, the parties agreed that the correct weekly compensation rate was $207.28, and the commission entered an order to that effect.

[3] These payments were erroneously based on the compensation rate of $206.68 rather than $207.28. See supra footnote 2.

total disability benefits for the period August 1, 2004 through July 8, 2006. However, the correct amount due the claimant was $20,936.29. We find that the application is void ab initio.

On that basis, the deputy held claimant was entitled to "the underpayment and penalties."

The employer and carrier filed a request for review, again alleging that because employer paid claimant *wages* in excess of her compensation rate through the date of the hearing, the application for hearing was not void *ab initio*. Employer conceded that when it filed its application for hearing asking to terminate the award, it underpaid the amount of compensation due to bring its payments under the outstanding award current to within two years of the date of the filing of the application.[4]

On review, a majority of the commission rejected the deputy's ruling and sided with employer, holding "employer's application was valid." Noting that the employer "erroneously paid a lesser amount than the owed $20,936.29," the commission nevertheless concluded employer's payment of wages to claimant for light-duty work at a rate equal to or greater than her pre-injury average weekly wage constituted the payment of compensation under the tolling provisions of Code § 65.2-708. It reasoned as follows:

> [T]he dissent argues that [Code §] 65.2-708(C), the tolling provision for the two-year statute of limitations . . . in [Code §] 65.2-708(A)[,] does not apply when an employee is under an Award. The effect of such a holding would be that [§] 65.2-708(C) applies to employees but not to employers, since employer's applications seek to terminate [existing] awards. If no award exists, then there would be no basis upon which an employer could file a change in condition application. Indeed, the Commission routinely dismisses employer change in condition applications which are filed when an award is not in place.

_____

[4] Employer conceded it owed a total of $20,936.29 for the entire period between August 1, 2004, and July 8, 2006, and made a lump sum payment of only $20,551.90, which would result in an underpayment of $384.39. In so doing, it may have overlooked the payments of temporary total disability for various dates in 2005 it made on February 23, 2006. Under either method of calculation, however, employer's payment was insufficient to satisfy the commission's "strict interpretation of [Rule 1.4's] provisions," Specialty Auto Body v. Cook, 14 Va. App. 327, 331, 416 S.E.2d 233, 235 (1992), and employer does not contend otherwise.

However, if the Virginia General Assembly intended to preclude employers from invoking [Code §] 65.2-708(C), it could have done so within the language of the statute. There is simply no exception specified within the language of [Code §] 65.2-708(C) that indicates that this provision is inapplicable to change in condition filings by employers.

Here, the employer paid wages at a rate greater than or equal to the pre-injury wage to an employee who was physically unable to return to [her] pre-injury work due to a compensable injury and who was provided work within [her] capacity. Pursuant to the plain language of [§] 65.2-708(C), this is all that is required for the wages to "be considered compensation."

Accordingly, we terminate the outstanding award effective July 8, 2006[,] as the employer properly paid compensation in connection with the filing of its application pursuant to [Code §] 65.2-708(C). In passing, we note that our decision on this issue clearly works no hardship on the claimant, as [s]he has, even under our holding, been overpaid by over $20,000 which the carrier will not be able to recover by way of a credit or otherwise.

The commission terminated the award as of July 9, 2006, and denied claimant's request for penalties and interest.

Commissioner Diamond dissented, agreeing with the deputy's ruling that employer's application was void *ab initio*. She cited Scott v. Scott, 16 Va. App. 815, 433 S.E.2d 259 (1993), for the proposition that subsection (C) of Code § 65.2-708 extends the statutory period in subsection (A) of that statute "'to prevent employers from lulling partially disabled workers into a false sense of security during this two year period by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits.'" She averred subsection (C) "would only apply if the employee was not under award for compensation benefits and needed to file a change in condition application to receive an additional award of compensation" and "does not mean we will now equate wages [paid to an employee who has returned to work for her employer in a light-duty capacity] as compensation which was paid pursuant to an award."

Commissioner Diamond relied upon the ruling in Genesis Health Ventures, Inc. v. Pugh, 42 Va. App. 297, 591 S.E.2d 706 (2004), in which the injured claimant returned to work for the pre-injury employer, at which time the employer stopped paying compensation but failed to file an application for hearing to terminate the disability award until a little over two years later. Commissioner Diamond noted that the commission's claims examiner rejected the application as invalid under Rule 1.4 (tracking the language of Code § 65.2-708(A)); that the commission affirmed on review; and that the Court of Appeals affirmed the rejection because, quoting Pugh, 42 Va. App. at 299-300, 591 S.E.2d at 707, "'the application was not "filed within two years from the date compensation was last paid pursuant to [the] award" and . . . did not satisfy the requirement of Rule 1.4(E).'"

Finally, Commissioner Diamond reasoned that "[t]he most logical way to address this issue is to require the employer to file an application when the employee returns to work and if the employer does not follow the rules, then the employer must pay the correct amount of compensation as awarded by the Commission." She argued that, "[o]therwise, the [commission's] Benefits Administration Department will not be able to determine if the application is technically correct."

Claimant noted this appeal.

II.

ANALYSIS

Claimant contends the commission erroneously concluded that employer's application for hearing was properly docketed, that employer's payment of wages should be considered the payment of compensation due pursuant to the outstanding award, and that those payments were made in a timely fashion such that claimant was not entitled to statutory penalties or interest. For the reasons that follow, we hold the commission properly concluded it had authority to consider

employer's application for hearing but erroneously concluded both that employer had paid all compensation due under the award and that claimant was not entitled to penalties or interest.

## A. APPLICABLE LAW AND RULES

On review on appeal, we must defer to the commission's findings of fact if supported by credible evidence in the record. Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 127, 510 S.E.2d 255, 259 (1999) (en banc). "When a challenge is made to the commission's construction of its rules, 'our review is limited to a determination of whether the commission's interpretation of its own rule was reasonable.' We will not set aside the commission's interpretation of its rules unless that interpretation is arbitrary and capricious." Boyd v. People, Inc., 43 Va. App. 82, 86-87, 596 S.E.2d 100, 102-03 (2004) (quoting Classic Floors, Inc. v. Guy, 9 Va. App. 90, 93, 383 S.E.2d 761, 763 (1989)). As to issues of statutory construction,

> [a]lthough "the practical construction given to a statute by public officials charged with its enforcement is entitled to great weight by the courts and in doubtful cases will be regarded as decisive," [S.] Spring Bed Co. v. State Corp. Comm'n, 205 Va. 272, 275, 136 S.E.2d 900, 902 (1964), "when an issue involves a pure question of statutory interpretation, that issue does not invoke the agency's specialized competence but is a question of law to be decided by the courts." Alliance to Save the Mattaponi v. Commonwealth, 270 Va. 423, 442, 621 S.E.2d 78, 88 (2005).

Commonwealth v. Barker, 275 Va. 529, 536, 659 S.E.2d 502, 505 (2008); see Gordon v. Ford Motor Co., 55 Va. App. 363, 370 n.5, 685 S.E.2d 880, 883 n.5 (2009) (en banc).

Pursuant to Code § 65.2-708(A), "a party may ask the commission to 'review any award' of benefits based upon a change of condition." Gordon, 55 Va. App. at 369, 685 S.E.2d at 883 (quoting Code § 65.2-708(A)). That subsection provides in relevant part as follows:

> Upon its own motion or upon the application of any party in interest, on the ground of a change in condition, the Commission may review any award and on such review may make an award ending, diminishing or increasing the compensation previously awarded, subject to the maximum or minimum provided in this title . . . . No such review shall affect such award as regards any

moneys paid except [under certain circumstances not applicable in the instant case]. No such review shall be made after twenty-four months from the last day for which compensation was paid, pursuant to an award under this title, except [under certain circumstances not applicable in the instant case].

Code § 65.2-708(A). "This section is the only statutory authority for a review on the ground of a change in condition," and both the claimant and the insurer or employer derive "the same" rights "to make such application" "from the same source." Bristol Door & Lumber Co. v. Hinkle, 157 Va. 474, 477, 161 S.E. 902, 903 (1932) (decided under § 47 of a predecessor version of the Workers' Compensation Act, 1918 Va. Acts. ch. 400).

We recently observed that

the twenty-four-month limitation of Code § 65.2-708(A) "is not a statute of limitations in the ordinary sense. It does not provide that [a party] has twenty-four months from the date the change in condition occurred to file." Rather subsection A provides that the change in condition must occur within twenty-four months from the date [for which] compensation was last paid.

Gordon, 55 Va. App. at 369, 685 S.E.2d at 883 (quoting Armstrong Furn. v. Elder, 4 Va. App. 238, 241, 356 S.E.2d 614, 615 (1987) (applying former Code § 65.1-99, now Code § 65.2-708(A))). It is also well settled that the time provisions of Code § 65.2-708 are not jurisdictional and may be waived. Binswanger Glass Co. v. Wallace, 214 Va. 70, 74, 197 S.E.2d 191, 194 (1973) (decided under the predecessor statute, Code § 65.1-99).

As we also have recently observed, "Subsection [(C)] of Code § 65.2-708, in turn, operates as a tolling provision that extends th[e] limitation [in subsection (A)]. This tolling is effected by an expanded definition of compensation to include wages paid to a claimant for light-duty work that are equal to or greater than his pre-injury wages . . . ." Gordon, 55 Va. App. at 369-70, 685 S.E.2d at 883. As set out in subsection (C),

All wages paid, for a period not exceeding twenty-four consecutive months, to an employee (i) who is physically unable to return to his pre-injury work due to a compensable injury and

- 10 -

> (ii) who is provided work within his capacity at a wage equal to or greater than his pre-injury wage, shall be considered compensation.

Code § 65.2-708(C).

Pursuant to subsection (A) of the statute, the commission has developed Rule 1.4, which provides in relevant part that if an employer wishes to have a change-in-condition application docketed and set for hearing, "[c]ompensation shall be paid through the date the application was filed, unless" "[t]he application alleges the employee returned to work, in which case payment shall be made to the date of the return." Rule 1.4(C)(1).[5] In addition, subsection (E) of Rule 1.4, which tracks the language in the last sentence of Code § 65.2-708(A), provides that "[n]o change in condition application under § 65.2-708 of the Code of Virginia shall be accepted unless filed within two years from the date compensation was last paid pursuant to an award."

### B. DOCKETING OF EMPLOYER'S APPLICATION

Neither Code § 65.2-708 nor the related commission rule, Rule 1.4, provides a time limitation within which an employer must file a change-in-condition application after a claimant returns to work at or above his pre-injury wage, as it must if it wishes to have the commission terminate an outstanding award without the claimant's consent.[6] See May v. Hartz Broadway,

---

[5] In Sargent Electric Co. v. Woodall, 228 Va. 419, 323 S.E.2d 102 (1984), based on language in the predecessor to present Rule 1.4, the Court, without discussion, interpreted the rule's "'returned to work'" language to mean "returned to work *at an average weekly wage equal to [the employee's] pre-injury wage*." 228 Va. at 422 n.1, 425, 323 S.E.2d at 103 n.1, 105 (quoting Rule 13 as it existed prior to the amendment effective May 1, 1979) (emphasis added). The commission gives present Rule 1.4(C)(1) a similar construction. See Odin, Inc. v. Price, 23 Va. App. 66, 70, 474 S.E.2d 162, 163-64 (1996) (noting the commission's holding that where a claimant was under an outstanding award of temporary total disability and "returned to work at a lesser wage" with the employer's knowledge, the employer was "not entitled to unilaterally discontinue payment of compensation" and was required to "file an Agreed Statement of Fact [endorsed by both parties] memorializing the return to work," along with "a Supplemental Memorandum of Agreement for the temporary partial disability that was clearly due," or "an Employer's Application for Hearing").

[6] This issue is distinct from the question of how long an employer may wait after terminating compensation to file the related change-in-condition application. Other than the

No. 218-80-32 (Va. Workers' Comp. Comm'n Aug. 22, 2007). Code § 65.2-708(A) provides

instead simply that, subject to certain exceptions not applicable here, "[n]o such review shall be

made after twenty-four months *from the last day for which compensation was paid*." Code

§ 65.2-708(A) (emphasis added); see also Rule 1.4(E) (providing in the commission's rule

relating to employers' applications for hearing that "[n]o change in condition application under

§ 65.2-708 . . . shall be accepted unless filed within two years from the date compensation was

last paid pursuant to an award"). Construed together, the statute and Rule 1.4 require that where,

as here, a claimant under an outstanding award returns to work earning a wage at or above her

pre-injury wage and the employer unilaterally ceases making payments under the award, if the

employer waits more than two years after the last date for which it paid compensation to request

a hearing to terminate the award, it must pay "compensation" as defined by the Act through a

date no less than two years prior to the date on which it files its application for hearing.

Here, claimant returned to work on August 1, 2004, at which time employer ceased

making compensation payments under the award, and employer filed its application to terminate

two-year restriction in Code § 65.2-708(A), see also Rule 1.4(E), in the case of an employee's return to work at or above his pre-injury wage, neither the statute nor the rule explicitly states how long an employer may wait after terminating compensation to file the related change-in-condition application. Compare Rule 1.4(C)(1) (providing that upon an employer's filing of a change-in-condition application, "[c]ompensation shall be paid through the date the application was filed, *unless* . . . 1. [t]he application alleges the employee returned to work, in which case *payment shall be made to the date of the return [to work]*" (emphasis added)), with Rule 1.4(C)(2) (providing that upon an employer's filing of a change-in-condition "application alleg[ing] a refusal of selective employment or medical attention or examination, . . . payment shall be made *to the date of the refusal or 14 days before filing, whichever is later*" (emphasis added)), and Rule 1.2(B) (providing that upon *an employee's* filing of a change-in-condition application, "[a]dditional compensation may *not* be awarded *more than 90 days before the filing of the claim*" (emphasis added)). For all types of change-in-condition applications *other than* an employer's application based on a return to work at or above the claimant's pre-injury wage, the commission's rules contain explicit time limitations for when compensation may be terminated in relation to when the application is filed. See Rules 1.2 & 1.4. We need not consider on these facts whether some other legal principle might require an employer to file by a date earlier than "twenty-four months from the last day for which compensation was paid" because claimant has not advanced such an argument in this case.

the award on July 8, 2008, almost four years later. Thus, in order to have its application for hearing docketed, employer was required to pay "compensation" within the meaning of Code § 65.2-708 through at least July 8, 2006, the date two years prior to the filing of the application.

The commission concluded that employer's payment of *wages* to claimant for light-duty work at a rate equal to or greater than her pre-injury wage constituted the payment of "compensation" as defined in Code § 65.2-708(C), thereby satisfying the time provisions of Code § 65.2-708(A). Under the commission's reasoning, per subsection (C) of Code § 65.2-708, employer's ongoing payment of these wages to claimant beginning on the date of her return to work on August 1, 2004, tolled the subsection (A) statute of limitations for up to twenty-four consecutive months, until August 1, 2006. Per subsection (A), employer then had twenty-four months from August 1, 2006—the date the tolling ceased—to file a timely change-in-condition application. Thus, employer's filing on July 8, 2008—just three weeks before the expiration of the statute of limitations on August 1, 2008—was timely.

Claimant contends, as the dissenting commissioner posited, that subsection (C) applies only to applications submitted by claimants and not to those submitted by employers. She points to various appellate decisions commending the commission's promulgation of its Rule 1.4 "to police th[e] tendency of employers and insurers to terminate first and litigate later," Dillard v. Commission, 416 U.S. 783, 789, 94 S. Ct. 2028, 2032, 40 L. Ed. 2d 540, 547 (1974), quoted with approval in Speciality Auto Body v. Cook, 14 Va. App. 327, 330-31, 416 S.E.2d 233, 235 (1992). She cites the evolution of the various subsections of Code § 65.2-708 in support of her argument.

We hold the commission properly interpreted Code § 65.2-708(C) as it applies to toll the provisions of subsection (A). In our recent decision in Gordon, which involved a claimant's

application for hearing, we stated as follows without making any distinction between applications filed by claimants and those filed by employers and carriers:

> Subsection C sets forth a caveat to the operation of the subsection A statute of limitations by providing that wages, when paid under the prescribed circumstances, are "considered compensation." As a result, the payment of such wages tolls the statute of limitations in the same manner as the payment of compensation. This caveat, in turn, is subject to the condition that the wages will cease being treated as compensation at the point when "a period" of such payment of wages "exceed[s] twenty-four consecutive months."

Gordon, 55 Va. App. at 372, 685 S.E.2d at 884 (quoting Code § 65.2-708(C) (emphasis omitted)).

We see nothing in the language of the statute or its context within the Workers' Compensation Act (the Act) to indicate subsection (C) applies to extend the statute of limitations only for change-in-condition applications filed *by claimants*. "In construing statutes, courts are charged with ascertaining and giving effect to the intent of the legislature." Crown Cent. Petroleum Corp. v. Hill, 254 Va. 88, 91, 488 S.E.2d 345, 346 (1997). "That intention is initially found in the words of the statute itself, and if those words are clear and unambiguous, we do not rely on rules of statutory construction or parol evidence, unless a literal application would produce a meaningless or absurd result." Id. "[W]here the legislature has used words of a plain and definite import[,] the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." City of Va. Beach v. ESG Enters., 243 Va. 149, 152-53, 413 S.E.2d 642, 644 (1992). Although the Act is "highly remedial" and should "be liberally construed [in favor of claimants] to advance its purpose . . . [of compensating employees] for accidental injuries resulting from the hazards of the employment," Henderson v. Cent. Tel. Co., 233 Va. 377, 382, 355 S.E.2d 596, 599 (1987), "'statutory construction may not be used to extend the rights created by the Act beyond the limitations and purposes set out therein,'" Corp. Res. Mgmt. v. Southers, 51 Va. App. 118, 126, 655 S.E.2d 34,

- 14 -

38 (2008) (en banc) (quoting Garcia v. Mantech Int'l Corp., 2 Va. App. 749, 754, 347 S.E.2d 548, 551 (1986)).

Subsection (C) provides simply that "all wages paid . . . to an employee [that meet certain requirements] shall be considered compensation." This subsection provides no language indicating it applies only to claimants' applications for hearing or only when no compensation award is then in effect. Cf. Hinkle, 157 Va. at 477, 161 S.E. at 903 (holding that subsection (A)'s predecessor statute provides claimants and employers with "the same" rights upon the occurrence of a change in condition). "Had the legislature intended a different result, it could easily have used different language." Scott, 16 Va. App. at 819, 433 S.E.2d at 262.

We also see nothing in the history of the evolution of the statute contravening its language and compelling the conclusion that subsection (C) does not apply to the determination of whether an employer's application for hearing was timely filed.[7] Claimant points to our decisions in Greene v. Gwaltney of Smithfield, Inc., 13 Va. App. 486, 413 S.E.2d 650 (1992), and Scott, 16 Va. App. 815, 433 S.E.2d 259, for the proposition that the legislature's *sole* purpose in enacting Code § 65.1-55.1, the predecessor to Code § 65.2-708(C), was to benefit claimants by "'prevent[ing] possible abuse by employers of the two year limitation period [previously] set forth in Code § 65.1-99 [and now codified in § 65.2-708(A)].'" Scott, 16 Va. App. at 819, 433 S.E.2d at 262.

It is true we held in Greene, 13 Va. App. at 492, 413 S.E.2d at 654, that the legislature, in enacting Code § 65.1-55.1, "recognized the problem identified by Greene"–the need "to prevent employers from lulling partially disabled workers into a false sense of security during this two year period by providing employees light duty work at their pre-injury wage for two years and then terminating the employee without liability for future disability benefits," Scott, 16 Va. App.

---

[7] See infra Part II(C) for a more detailed analysis of the evolution of this statute.

at 819, 433 S.E.2d at 262 (relying on <u>Greene</u> and stating in another context that "[the] statute was designed to prevent possible abuses by employers of the two year limitation period set forth in Code § 65.1-99"). Further, settled principles provide that "a statute should, if possible, be given a reasonable construction which will effect rather than defeat a legislative purpose evident from the history of the legislation." <u>Ambrogi v. Koontz</u>, 224 Va. 381, 389, 297 S.E.2d 660, 664 (1982). Here, the statute accomplishes the purpose of protecting claimants regardless of whether it also applies to applications submitted by employers. We did not hold in <u>Greene</u> or <u>Scott</u> that the legislature's *only* purpose in enacting the predecessor to subsection (C) of Code § 65.2-708 was to protect claimant employees. In short, the language of the statute prevails, and if the legislature had intended for Code § 65.2-708(C) to apply only to claimants' change-in-condition applications, it could have said so.

Of course, to the extent Rule 1.4's purpose of "policing th[e] tendency of employers and insurers to terminate first and litigate later" to the detriment of the claimant might conflict with the tolling provisions of Code § 65.2-708(C), the statute's provisions would control. See <u>Ashby v. Ramar Coal Co.</u>, 47 Va. App. 8, 13, 622 S.E.2d 230, 232-33 (2005) (noting the commission lacks power to make rules that are inconsistent with the Act and that in the case of a conflict, "the statute must prevail"). In any event, we detect no conflict. To the contrary, we conclude the tolling provision of Code § 65.2-708(C) ensures that injured employees are not deprived of the financial resources to which they are entitled under the Act (disability compensation or pre-injury wages) while *simultaneously* providing that, where an employee is working in light-duty employment provided by the employer and earning at least his pre-injury average weekly wage, the employer and carrier may have the commission *docket* an application requesting the termination or adjustment of the outstanding award without being required to pay, *in addition to the claimant's wages*, compensation it may never be able to recoup. However, the

- 16 -

issue of the *docketing* of the employer's application for hearing is separate and distinct from the issue of whether the employer and carrier may subsequently be found to owe additional compensation and penalties under the ongoing award.

Employers will comply with the Act by paying compensation when due under an award and seek immediate adjustment of an award when circumstances change that may justify reduction or termination. An employer who fails promptly to request such action does so at its peril. However, Code § 65.2-708 provides an employer is entitled to file its application for hearing without bringing its compensation payments current to closer than two years to the date of filing.[8]

## C. CLAIM FOR ADDITIONAL COMPENSATION AND PENALTIES

Claimant contends further, however, that the commission erroneously extended subsection (C)'s statement that the wages of specified employees "shall be considered compensation" under certain circumstances beyond the confines of Code § 65.2-708 to other portions of the Act involving calculation of the amount of compensation and penalties to which she was entitled under the outstanding award. After holding that the wages employer paid would "be considered compensation" "[p]ursuant to the plain language of [Code §] 65.2-708(C)," the commission concluded without further explanation that termination of the award effective July 8, 2006, two years prior to the date on which employer filed its application for hearing, was

---

[8] Our decision in Pugh, 42 Va. App. 297, 591 S.E.2d 706, relied upon by claimant and the dissenting commissioner, does not require the reversal of the commission's decision to docket employer's application for hearing. Pugh involved a claimant who was paid wages upon return to his *full pre-injury employment*, see Pugh v. Genesis Health Ventures, Inc., No. 202-16-56 (Va. Workers' Comp. Comm'n Jan. 23, 2003), whereas Code § 65.2-708(C)'s expanded definition of wages expressly applies only where the claimant is "physically unable to return to his pre-injury work due to a compensable injury" and is "provided work within his capacity at a wage equal to or greater than his pre-injury wage," see Nguyen v. Fairfax County Bd. of Sup'rs., 26 Va. App. 100, 103, 493 S.E.2d 391, 392 (1997). Thus, our decision in Pugh does not compel the rejection of employer's application for hearing.

- 17 -

appropriate because "the employer properly paid compensation in connection with the filing of its application." The commission made no mention of the penalties and interest claimant had requested and observed that its decision to terminate benefits without awarding any additional payments "clearly works no hardship on the claimant, as [s]he has, even under our holding, been overpaid by over $20,000 which the carrier will not be able to recover by way of a credit or otherwise." The commission, which had already found that employer *did not* pay temporary total disability benefits in the amount due through July 8, 2006, therefore implicitly held that wages "considered compensation" for purposes of Code § 65.2-708(C) would also be "considered [timely-paid] compensation" for purposes of the outstanding award. Based on the above principles of statutory construction and the legislative history surrounding Code § 65.2-708(C), we agree that the commission's holding on this issue in this case was erroneous[9] and that claimant is entitled to unpaid compensation and penalties for late payment.

The language in present Code § 65.2-708 comprises what was once two separate code sections, §§ 65.1-99 and -55.1. Code § 65.1-99, the predecessor to subsection (A) of Code § 65.2-708, provided the time limitation for filing a change-in-condition application. That statute originally allowed the commission to review an award based on a change in condition "at any time," see 1918 Va. Acts. ch. 400, and evolved into the present limit of twenty-four months, see 1977 Va. Acts ch. 380. In 1989, the legislature enacted former Code § 65.1-55.1, the substance of which is presently codified in subsection (C) of Code § 65.2-708. See 1989 Va. Acts ch. 552. As already discussed, that enactment was based in some part upon the concern that

_____

[9] We note that, on a prior occasion, the commission reached what we hold today to be the correct conclusion. See Peak v. McNew, No. 158-56-32 (Va. Workers' Comp. Comm'n June 23, 1994) ("We now consider payment of regular wages to a partially impaired worker to be 'compensation' for the purposes of filing change in condition applications . . . because of a recent specific statutory change extending the definition *for that very limited purpose*." (citing Code § 65.2-708) (emphasis added)).

> unless wages paid in lieu of compensation are treated as
> compensation benefits paid under an award, employers will be able
> to deprive employees of their full compensation benefits merely by
> providing them light-duty employment at their pre-injury wage, in
> lieu of paying workers' compensation benefits, and then
> terminating employees with impunity as soon as the period of
> limitation provided in Code § 65.1-99 [for filing a change in
> condition application] had expired.

Greene, 13 Va. App. at 492, 413 S.E.2d at 654. As enacted in 1989, former Code § 65.1-55.1

provided as follows:

> All wages paid, for a period not exceeding twenty-four consecutive
> months, to an employee (i) who is physically unable to return to
> his pre-injury work due to a compensable injury and (ii) who is
> provided work within his capacity at a wage equal to or greater
> than his pre-injury wage shall, *for the sole purposes of Code
> § 65.1-99*, be considered compensation.

1989 Va. Acts ch. 552 (emphasis added). Thus, as originally enacted, former Code § 65.1-55.1

expressly provided that its statement of what type of wages shall "be considered compensation"

applied only to determining whether a change-in-condition application under former Code

§ 65.1-99, now Code § 65.2-708(A), had been timely filed and did not apply to calculating the

amount of compensation ultimately due under the award. See Rose v. Red's Hitch & Trailer

Serv., Inc., 11 Va. App. 55, 59, 396 S.E.2d 392, 394 (1990).

When the legislature recodified Title 65.1 in 1991, it combined the provisions of former

Code § 65.1-99 and § 65.1-55.1 in the same statute, present Code § 65.2-708. See 1991 Va. Acts

ch. 355. Under settled principles, we presume "that a recodified statute does not make

substantive changes in the former statute unless a contrary intent plainly appears in the recodified

statute." Waldrop v. Commonwealth, 255 Va. 210, 214, 495 S.E.2d 822, 825 (1998). Applying

these principles in this case, we presume that when the legislature combined these two statutes

and eliminated the language indicating the definition of "wages" to be "considered

compensation" applied only to applications for change in condition, the legislature did not intend

- 19 -

to expand that definition of wages to other parts of the Act. Rather, we presume it intended no change in the application of the definition and eliminated the phrase, "for the sole purpose of Code § 65.1-99," simply because, due to the consolidation of those provisions in a single statute, that limitation was obvious and no longer required to be expressly stated. See Introduction to Report of the Virginia Code Commission on the Recodification of Title 65.1 of the Code of Virginia (1991) (indicating that many of the revisions were to "combin[e] [sections] that, while topically related, were scattered throughout the title" and that "[d]rafting notes highlighting significant changes . . . are provided throughout"); id. at 21 (including a drafting note indicating that "[t]he provisions of [Code § 65.1-55.1] are incorporated into proposed § 65.2-708" and making no mention of an intent to change the meaning of the provision by removing the language limiting application of the "considered compensation" language); id. at 36-37 (including a drafting note indicating that due to the interrelationship of the subjects, "§ 65.1-55.1 is moved here to subsection C [of § 65.2-708]" and again making no mention of an intention to change the meaning of former § 65.1-55.1 in doing so). Although we have not expressly addressed this issue, our prior case decisions support this analysis. See Gordon, 55 Va. App. at 369-70, 685 S.E.2d at 883 (observing that "[s]ubsection [(C)] of Code § 65.2-708 . . . *operates as a tolling provision that extends th[e] limitation [in subsection (A)]*" (emphasis added)); Augusta County Sch. Bd. v. Humphreys, 53 Va. App. 355, 364 n.7, 672 S.E.2d 117, 121 n.7 (2009) (holding that "*[f]or purposes of tolling the statute of limitations on a change-in-condition application*, [Code § 65.2-708(C)] mandates [that all wages meeting certain criteria shall be considered compensation]" (emphasis added)). Thus, we hold that by crediting employer for wages paid to claimant following her return to work on August 1, 2004, as against the temporary total disability compensation required to be paid under the outstanding award for purposes of

- 20 -

satisfying that award, the commission erroneously concluded that employer had paid all compensation in a timely fashion and that no additional compensation or penalties were due.

Further, contrary to the arguments advanced by employer, Virginia's prior appellate decisions make clear in similar contexts that an employer who fails to comply with an outstanding award is not entitled to be excused from paying past due benefits and penalties simply because the claimant returned to work at a wage equal to or greater than his pre-injury wage. As the Supreme Court held in Washington v. United Parcel Service of America, 267 Va. 539, 593 S.E.2d 229 (2004),

> the relevant statutes do not give an employer or carrier the unilateral right to cease paying compensation benefits to a disabled employee under an outstanding award, when that employee returns to work and the employer or carrier does not file an application [for hearing] or [a termination of wage loss award form][10] along with a supplemental [agreement to pay benefits form].[11]

Id. at 545, 593 S.E.2d at 232 (footnotes added).

We applied this holding in The Washington Post v. Fox, 49 Va. App. 692, 644 S.E.2d 105 (2007). In Fox, the claimant, who was receiving temporary disability benefits pursuant to an award, returned to work with the employer in a full-duty capacity at a wage equal to or greater than his pre-injury wage, and the employer unilaterally ceased paying benefits "without filing the appropriate paperwork with the commission." Id. at 694-95, 644 S.E.2d at 106. Twice prior to the employer's unilateral cessation of payments, the commission sent the employer's adjuster its standard letter stating as follows: "Our records indicate an outstanding award in this case. The Commission assumes that payments are continuing pursuant to the award. If payments have

---

[10] The commission has replaced the agreed statement of fact form with the termination of wage loss award form. See Carter v. Denny's, No. 179-91-88 (Va. Workers' Comp. Comm'n Dec. 8, 2000).

[11] The commission has replaced the memorandum of agreement form with the agreement to pay benefits form. See Southers, 51 Va. App. at 129 n.4, 655 S.E.2d at 39 n.4.

ceased, an executed [Termination of Wage Loss Award form] or an Employer's Application for Hearing must be filed to end the award." Id. at 695, 644 S.E.2d at 106. Between 1996 and 2003, after the employer's unilateral cessation of payments, the commission sent the employer's insurance adjusting service an additional seven letters containing the same or similar information, but employer's adjuster failed to file the forms necessary to have the award terminated. Id. at 695-96, 644 S.E.2d at 106-07. The award terminated by operation of law upon the passage of 500 weeks during which the award was outstanding. Id. at 696, 644 S.E.2d at 107. Thereafter, the claimant filed an application alleging the employer had underpaid him because it had ceased making temporary partial disability payments when the claimant ceased to experience a wage loss in 1996, even though the award remained outstanding for several more years. Id. The claimant also sought interest and a 20% penalty. Id. at 698, 644 S.E.2d at 107.

The deputy "declined to award back benefits and assess interest and a penalty," finding that to do so "would unjustly enrich [the] claimant." Id. at 698, 644 S.E.2d at 108. The commission ruled the Supreme Court's holding in Washington dictated a contrary result, and we agreed. Fox, 49 Va. App. at 698-99, 703, 644 S.E.2d at 108, 110. We also relied on language in Uninsured Employer's Fund v. Peters, 43 Va. App. 731, 601 S.E.2d 687 (2004), that the claimant's right to compensation due under the open award had vested, and we held

> no legal authority supports [the] employer's argument that, under the facts of this case, it should be excused from the consequences of its decision to unilaterally stop paying [the] claimant compensation benefits due under the March 19, 1993[,] outstanding award, when he returned to work with employer in April 1996, without filing the appropriate paperwork or an employer's application with the commission to terminate that award.

Fox, 49 Va. App. at 700, 644 S.E.2d at 109. We cited the commission's repeated notifications to the employer that the award remained outstanding and the employer's repeated failure to take appropriate action. Id.

- 22 -

Similarly, here, although the commission notified employer the award had not been properly terminated and employer attempted to submit the paperwork necessary to terminate the award in the fall of 2004, the commission notified employer it had failed to submit certain additional paperwork that was required to process the termination request. Employer failed to act in response to that notice, and the commission notified employer on two additional occasions during 2005 that the award remained outstanding and that it assumed payments under the award were ongoing. On one of those occasions in 2005, the commission included an itemized list of the additional documents employer needed to submit in order to have the award terminated, but by late 2005, employer still had failed to comply.

In 2006, claimant, by counsel, notified the commission that employer was not paying her pursuant to the outstanding award and sought employer's full compliance and an award of penalties. The commission issued a show cause order, and employer responded by paying compensation for only twelve days of disability rather than the 18 months of disability compensation then due pursuant to the ongoing award. The deputy dismissed the show cause, but the commission again immediately sent employer its standard letter indicating the award remained outstanding and that it assumed payments under the award were continuing. In May 2006, claimant forwarded employer a signed supplemental agreement to pay benefits form covering one of the periods for which the commission had requested additional paperwork, but employer apparently took no action with respect to that form.

In 2007, the commission yet again sent the carrier its standard letter indicating the award remained outstanding, but again employer took no action in response to that letter. In 2008, claimant renewed her request for entry of an order requiring employer to pay past due compensation and penalties, and claimant indicated that if employer disputed its obligation to pay compensation or penalties, she desired an evidentiary hearing or entry of an order to show

cause.  The commission issued a second show cause order, and by submission dated July 8, 2008, employer finally requested a hearing seeking to terminate the award.

We hold the facts of this case are legally indistinguishable from Washington, Fox, and Peters.  Although employer submitted some of the forms required for termination, the commission promptly notified employer it required certain additional forms in order to terminate the ongoing award.  Thereafter, despite repeated notifications like in Fox, employer took no action whatever to seek termination of the open award for a period of more than three years.  On these facts, we hold the commission erred in failing to order payment of the remaining past due compensation and penalties pursuant to Code § 65.2-524.

## D.  CLAIM FOR INTEREST

Claimant also requests payment of interest pursuant to Code § 65.2-707.  That code section provides that "[t]o the extent any *payment due under an award* is delayed beyond its due date *by reason of an appeal* to the full Commission or an appellate court, payments so delayed shall bear interest at the judgment rate as provided in § 6.1-330.54."  Code § 65.2-707 (emphases added).  Thus, on remand, the commission should determine how much compensation remains "due [to claimant] under [the] award" within the meaning of Code § 65.2-707.  Because penalties are paid pursuant to Code § 65.2-524, they are not "payment[s] due under an award," Code § 65.2-707, and thus, claimant is not entitled to interest on those sums.[12]

## III.

For these reasons, we hold the record supports the commission's conclusion that employer's hearing application was properly docketed.  We also hold the commission erred in

---

[12] Although the commission's decisions in other cases, like our own memorandum opinions, are not binding on us, the commission reached this same conclusion in Kelley v. Midway Trucking, Inc., No. 197-69-19 (Va. Workers' Comp. Comm'n Apr. 23, 2001), aff'd per curiam, No. 2597-03-3 (Va. Ct. App. Feb. 17, 2004).

- 24 -

concluding that the wages employer paid claimant constituted compensation for purposes of determining whether all compensation due under the award had been paid and whether employer and carrier owed penalties and interest.  Finally, we conclude the commission erred in not awarding (a) penalties on all late paid compensation and (b) interest on compensation remaining due during the pendency of the appeal.  Thus, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

<u>Affirmed in part,</u>
<u>reversed in part,</u>
<u>and remanded.</u>