COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, McCullough and Senior Judge Willis
Argued at Richmond, Virginia


ROBERT STOKES

MEMORANDUM OPINION[*] BY
v.        Record No. 1599-11-3          JUDGE STEPHEN R. McCULLOUGH
MARCH 27, 2012

MONOGRAM SNACKS MARTINSVILLE, LLC
  AND TWIN CITY FIRE INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

James B. Feinman (James B. Feinman & Associates, on brief), for
appellant.

S. Vernon Priddy III (Michael L. Goff, Jr.; Stephen A. Marshall;
Two Rivers Law Group, P.C., on brief), for appellees.


Robert Stokes ("Stokes" or "claimant") appeals a denial of benefits by the commission.  He

contends that (1) no credible evidence supports the judgment of the commission, (2) the

commission erred in arbitrarily rejecting the opinion of his three treating physicians, and (3) the

commission erred by relying on hearsay evidence to reject Dr. Chumble's opinion.[1]  We find his

arguments unpersuasive and affirm the commission.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Stokes' first assignment of error is that "there is no credible evidence in the record to refute
or rebut the factual findings of deputy commissioner Blevins and Commissioner Diamond, as the
evidence relied upon by [the majority] cannot be attributed any weight whatsoever pursuant to the
mandate of the Supreme Court of Virginia in Clinchfield Coal Co. v. Bowman, 229 Va. 249, 252,
329 S.E.2d 15, 16-17 (1985)."  In his second assignment of error, Stokes contends that the
commission "erred in arbitrarily rejecting the opinion of Stokes' three treating physicians."  His
third and final assignment of error is that "the majority of the commission erred by rejecting
Dr. Chumble's opinion in support of Stokes based on triple hearsay."

BACKGROUND

Stokes was employed as a winder at Monogram Snacks.  On January 22, 2010, he was electrocuted when he plugged in a vending machine.  Medical records from Martinsville Urgent Care from the date of the accident reflect that he reported an injury to his right hand, both arms, and both upper extremities.  No mention is made of a back injury or of any back pain.

Donna Martin, the Human Resources manager at Monogram Snacks, spoke with the claimant upon his return from Martinsville Urgent Care.  Stokes told her that he had been electrocuted and that he had injured his hands.  He again made no mention of a back injury.  Martin stated on cross-examination that Stokes was a good and reliable employee and that, although she did not deal with him much, as far as she knew he was a credible person.

Two days later, on January 24, 2010, Stokes was admitted to Roanoke Memorial Hospital.  According to those medical records, Stokes stated that when he attempted to plug together the machine, it "'blew up' throwing him back and catching the rubber bib he had on, on fire . . . .  He did not fall down or sustain secondary injury."  The notes further state that "[h]e denies again any secondary injury."  Notes from a visit on the same date with Dr. Lauzau state that Stokes suffered from headaches, pain in the arms and hands and in the lower back.  These notes provide the following description of the accident:  "shocked when plugging in 220, while standing in water."

According to a stipulation of the parties, Stokes returned to light-duty work from February 4, 2010 to February 25, 2010.

Dr. Shubha A. Chumble, of Martinsville Neurological Associates, noted on February 12, 2010, that Stokes was complaining of hand pain as well as back pain.  The description of the accident provided in this record makes no mention of a collision with another machine.

Also on February 12, 2010, the case manager for the employer's workers' compensation insurance provider inquired of Dr. Lauzau whether the diagnosis was "directly and causally related

to the electrical shock accident." In response, Dr. Lauzau wrote in relevant part that "I am unable to determine this simply from the physical findings."

On February 22, 2010, Dr. Chumble diagnosed Stokes as "most likely" suffering from musculoskeletal strain in the neck and lower back. In response to a letter from the case manager for the insurance carrier, Dr. Chumble stated that "it would be difficult to explain his symptoms" of back pain "unless his body jerked" when he was injured. Dr. Chumble's handwritten note, however, was made in response to a characterization of the accident by a case manager that differs from Stokes' later description of the accident. The case manager told Dr. Chumble that Stokes did not "fall or stumble" during the incident and neither did he "strike the wall or any other objects."

On June 28, 2010, Dr. Chumble prepared a letter for counsel for the employer, acknowledging Stokes' complaints of neck and lower back pain, and noting that these injuries "cannot be explained on the basis of the type of injury he described."

On July 6, 2010, in response to a form supplied by counsel for Stokes, Dr. Chumble placed a checkmark below "true" when asked whether "to a reasonable degree of medical probability, the treatment I rendered Mr. Stokes is a direct result of and was caused by electric shock suffered when he was employed with Monogram Snacks . . . on January 22, 2010."

On July 13, 2010, Dr. Lauzau checked "true" in response to a letter from Stokes' counsel containing the following statement: "to a reasonable degree of medical probability, the treatment I rendered Mr. Stokes is a direct result of and was caused by electric shock suffered when he was employed with Monogram Snacks . . . on January 22, 2010." He also checked "true" to an additional statement that "to a reasonable degree of medical probability, the accident that occurred on or about January 22, 2010 . . . caused his electric shock injury, thereby causing the need for treatment, as well as the subsequent disability." Dr. Lauzau qualified this statement, however, by

writing that "[e]xcept that I cannot say that to a reasonable degree of medical certainty that the electric shock injury caused any subsequent disability."

Over the course of several months, from the beginning of August to the end of September 2010, medical records show that Stokes received care from Tracy Lange, a nurse practitioner with Bassett Family Practice, for a variety of symptoms including back pain. The notes list Lange as the "provider" and bear her signature.

On October 8, 2010, Dr. David Lewis, in response to a check-the-box letter sent to him from Stokes' counsel, checked "true" in response to a statement that

> [b]ased on the medical history, physical examination, and radiological studies, and to a reasonable degree of medical probability, it is [his] opinion that Mr. Stokes has been restricted from all work since the date of the accident, January 22, 2010, and continuing as a result of the injuries sustained in that accident.

He again checked "true" on a statement that it was his "opinion that Mr. Stokes' disc protrusion in his back is totally disabling to him" and that "[t]his injury was a result of the January 22, 2010, accident."

The employer sought an independent medical examination from Dr. James M. Leipzig. Dr. Leipzig reviewed a number of records, including a cervical MRI and a lumbar MRI study, an MRI report, a cervical radiograph report, a progress note from nurse practitioner Tracy Lange, and a lumbar radiograph report. Dr. Leipzig also performed an examination of Stokes. Stokes told Dr. Leipzig that the electric shock threw him approximately twenty feet into another machine. In a report dated November 9, 2010, Dr. Leipzig concluded that although the claimant had suffered an occupational injury, there was "[n]o evidence of a lumbar injury" and "[n]o evidence of a cervical injury." Dr. Leipzig made note of the fact that the claimant exhibited a "strong disability mindset" based on his "moaning and groaning" during the examination. Dr. Leipzig further noted that, according to counsel for the employer, "the earlier records . . . state that [Stokes] did not have any

- 4 -

low back pain complaints initially" and this fact "would strengthen" his conclusion that Stokes did not sustain a back injury.

On the same date, Dr. Leipzig examined additional medical records, and he issued a supplemental report in which he confirmed his conclusion that he was "unable to attribute the neck or back pain to the injuries described." Among those notes were notes from Dr. Lauzau from a February 25, 2010 visit. In commenting on Dr. Lauzau's notes, Dr. Leipzig stated that "there is no report whatsoever of back pain or neck pain." Dr. Leipzig further incorrectly noted that the claimant "did not have any history, with regard to the accident, of neck or back pain."

At a hearing before the deputy commissioner, Stokes testified that the electrical shock projected him into the air, and he described the event in violent terms, testifying that he hit the other machine "so hard . . . I thought I was looking at myself on the floor dead." He also testified that Dr. David Lewis of Bassett Family Practice is the physician who treated him.

Medical records established that the claimant was struck by an automobile in 1996 while riding his bicycle. He injured his neck, lower back, left hip, and knee in that accident.

Following a hearing, the deputy commissioner held that claimant's low back pain was caused by the accident of January 22, 2010, and that he was completely disabled since the accident. The deputy commissioner reasoned that the claimant's version of the accident was unrebutted.

The employer appealed to the commission. The commission reversed, by 2-1 vote, with Commissioner Diamond dissenting. Following a meticulous review of the evidence, the commission held that "the claimant did not prove by a preponderance of the evidence that his back pain is related to the compensable accident," and, therefore, "he did not prove continuing disability."

ANALYSIS

On appeal from a decision of the Workers' Compensation Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below. Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577 S.E.2d 538, 539 (2003).

"The Act has always required the claimant to carry the burden of proving, by a preponderance of the evidence, (1) an 'injury by accident' or occupational disease, (2) arising out of, and (3) in the course of, the employment." Morris v. Morris, 238 Va. 578, 584, 358 S.E.2d 858, 862 (1989) (citations omitted).

I. THE MEDICAL OPINIONS PROFFERED BY THE CLAIMANT
ARE INCONCLUSIVE OR INCONSISTENT

To establish the causal link between the accident and his lower back pain, Stokes relies on the opinion of three physicians, who each checked a box on a form supplied by employer's counsel indicating that the claimant's back injury was caused by his electrocution. An examination of all of the evidence, however, shows the commission had reason to doubt the conclusions of these physicians.

First, the claimant relies on the testimony of Dr. Lewis. Stokes testified that Dr. Lewis is his family doctor. The record contains a "check the box" affirmation by Dr. Lewis, in response to a letter from claimant's counsel, that the electrocution Stokes suffered is the cause of his disability. Although the record contains notes from Tracy Lange, a nurse practitioner from Dr. Lewis' practice, the record contains no notes from Dr. Lewis. As the commission noted, it is not clear that Dr. Lewis ever examined the claimant, or even reviewed the notes from Lange. It may be that Dr. Lewis treated the claimant. The claimant, who bears the burden of proof, however, did not meet it here. Dr. Lewis' check the box form provides no explanation of the link between the claimant's lower back pain and his electrocution. Furthermore, Dr. Lewis incorrectly stated that Stokes has been

completely disabled since the date of the accident, despite the fact that the claimant returned to work on light duty from February 4, 2010 through February 25, 2010. Although "great weight should be given to the evidence of an attending physician," Bassett Burkeville Veneer v. Slaughter, 21 Va. App. 575, 580, 466 S.E.2d 127, 129 (1996) (citation omitted), the application of that principle here is limited due to the fact that it is not clear that Dr. Lewis actually was the attending physician and, furthermore, the basis of his opinion is uncertain.

The claimant stresses his own testimony and credibility in arguing that Dr. Lewis indeed treated him. In reviewing the commission's decision, however, this Court does not "retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). Ultimately, the determination of the credibility of a witness rests with the commission, not the deputy commissioner. Bullion Hollow Enters. v. Lane, 14 Va. App. 725, 728-29, 418 S.E.2d 904, 907 (1992). In this instance, the deputy commissioner did not make any specific observation of Stokes' credibility based on his demeanor and appearance. Therefore, the commission committed no error in failing to supply an explanation with respect to its own factual conclusions. Id.

Dr. Lauzau also checked "true" on the form provided by counsel to the statement that the treatment he provided to Stokes was "a direct result of and was caused by electric shock" and that this accident was the cause of Stokes' disability. On the same form, Dr. Lauzau indicated that "I cannot say that to a reasonable degree of medical certainty that the electric shock injury caused any subsequent disability." These contradictory pronouncements from Dr. Lauzau do not compel any particular conclusion.

Finally, Dr. Chumble checked a box on a form provided by Stokes' counsel linking the claimant's back pain to the electrocution accident. Dr. Chumble's conclusion is also undermined by a variety of contradictory statements. In response to a form submitted by the case manager for the

- 7 -

insurance carrier, Dr. Chumble responded that she could not explain claimant's cervical and lumbar pain. True, this conclusion was based on a characterization of the incident that conflicts with Stokes' account. Stokes testified that he was violently thrown fifteen feet when he was electrically shocked. The letter from the case manager to Dr. Chumble, in contrast, states that "Stokes did not fall or stumble. He did not strike the wall or any other objects." The account from the case manager, however, is consistent with a number of medical records, including records from Dr. Harless at Roanoke Memorial Hospital, which reflect that Stokes denied any secondary injury and that he did not fall down, and the records from Martinsville Urgent Care, in which no mention is made on the date of the accident of being thrown or of any back pain. Indeed, in the description of the accident contained in Dr. Chumble's notes, no mention is made of Stokes being thrown into the air and colliding with any other object. In short, the commission sensibly could, on these facts, discount Dr. Chumble's checking "true" on the form provided by Stokes' attorney.

We are not at liberty to ignore the standard of review or to reweigh the evidence for ourselves. This Court "must defer to the commission's findings of fact if supported by credible evidence in the record." Diaz v. Wilderness Resort Ass'n, 56 Va. App. 104, 114, 691 S.E.2d 517, 522 (2010); see Code § 65.2-706(A). As noted above, it is not the role of this Court to reweigh the evidence or to substitute its judgment with regard to the credibility of the witnesses. Wagner Enters., 12 Va. App. at 894, 407 S.E.2d at 35. In light of this standard of review, we find no error.

II. THE COMMISSION COULD CONSIDER THE TESTIMONY OF DR. LEIPZIG

Relying on Clinchfield Coal Co. v. Bowman, 229 Va. 252, 329 S.E.2d 15 (1985), Stokes argues that Dr. Leipzig's opinion "lacks a factual foundation[,] is inadmissible[,] and is entitled to no weight at all." The claimant notes that Dr. Leipzig incorrectly stated that the early medical records make no mention of back pain and that Dr. Leipzig was wrong when he found no mention of back pain in Dr. Lauzau's medical records, when, in fact, as early as January 24, 2010, two days

after the accident, the claimant was reporting back pain to Dr. Lauzau. He continued to regularly report back pain thereafter.

The employer argues that Duncan v. ABF Freight System, Inc., 20 Va. App. 418, 457 S.E.2d 424 (1995), forecloses the argument that Dr. Leipzig's testimony should not have been considered. In that case, the deputy commissioner denied the claimant's request for an evidentiary hearing and ruled against the claimant. Id. at 422, 457 S.E.2d at 425. The claimant did not ask the full commission to review the decision of the deputy commissioner denying a hearing. On appeal, the claimant argued that the failure to afford him a hearing constituted error. This Court held the issue was defaulted, noting that "[d]ecisions of a deputy commissioner that are not reviewed by the full commission cannot be brought before this Court." Id. at 422, 457 S.E.2d at 426. Analogizing the deputy commissioner's ruling admitting Dr. Leipzig's testimony to the refusal of the deputy commissioner to award a hearing in Duncan, the employer argues that the failure of the claimant to seek "cross-review" precludes review in this Court. In Duncan, the claimant was the party appealing to the commission. Therefore, it was incumbent on him to alert the commission to the error of the deputy commissioner. Here, however, Stokes *prevailed* before the deputy commissioner. He would have had no reason to seek review of the evidentiary ruling of the deputy commissioner admitting Dr. Leipzig's report. Moreover, Stokes vigorously argued before the commission in his written statement in opposition to the employer's request for review that Dr. Leipzig's testimony was "blatantly in error and lacks foundation." This was sufficient to alert the commission to the issue and to preserve the issue for review in this Court.

Although we do not find the argument defaulted, we nevertheless reject the argument on the merits. Stokes asserts that the commission attributed "dispositive weight" to the independent medical examination of Dr. Leipzig. We disagree. A fair reading of the commission's opinion is

that it considered the opinion of Dr. Leipzig along with the opinions of the other physicians, but gave no special weight to any one opinion.

When an expert witness' report is built *entirely* on a flawed foundation, and, as a consequence, the edifice constructed upon that foundation is unsound, the opinion must be disregarded as a matter of law. In Clinchfield Coal, for example, a physician first opined about a claimant's condition based on his *assumption* that the claimant's knee problem resulted from a 1978 accident. This same physician, following a review of medical records, later opined that the knee condition was in fact the product of a 1975 injury and that his current injury was but a continuation of this prior injury. Clinchfield, 229 Va. at 251-52, 329 S.E.2d at 16. The Supreme Court of Virginia held that the commission erred when it credited the physician's initial opinion, noting that "the record is devoid of any credible evidence connecting a change in [the claimant's] physical condition to the industrial accident." Id. at 252, 329 S.E.2d at 16. The Court observed that "the treating physician rendered but one opinion based upon the facts. His original assumption rested upon a faulty premise, and the Commission erred in attributing any weight to it." Id.

The mere fact that an opinion can be criticized as flawed in some respect, however, does not render the opinion inadmissible. In particular, the fact that a medical opinion is rendered without a review of all of the records does not by this sole fact render the opinion inadmissible. See Amelia Sand Co. v. Ellyson, 43 Va. App. 406, 410, 598 S.E.2d 750, 752 (2004) ("Clinchfield Coal does not stand for the proposition that doctors must have the entire medical history of an individual before they can state a valid opinion about the cause of a condition.").

Dr. Leipzig did not view all of the records, a point he acknowledged in his report. Nevertheless, it is clear that Dr. Leipzig reviewed extensive medical records, including an MRI, a lumbar radiograph report, a cervical radiograph report, as well as notes from other physicians and from the nurse practitioner. He also conducted a personal examination of the claimant. The flaws

the claimant points to go to the weight of the evidence rather than its admissibility. Furthermore, the claimant made sure the commission was well aware of those flaws.

We also note that Dr. Leipzig's initial opinion rested primarily on his physical examination of the claimant and medical tests such as "lumbar radiographs, cervical radiographs, lumbar MRI, and cervical MRI, [which] rule out any objective acute injury." Dr. Leipzig stated that the absence of low back pain from the "earlier records" only served to "strengthen the above comments."

The claimant notes that if such opinions can be admitted, it will encourage counsel to provide selective excerpts from the medical records that will lead a physician to the favored conclusion. If counsel were to engage in such tactics, however, the risk is that the opinion will be disregarded as unworthy of belief. Indeed, such tactics could well backfire. In this instance, the opinion of Dr. Leipzig rested on an adequate foundation and whatever flaws can be ascribed to it did not render it inadmissible as a matter of law.

III. THE COMMISSION COMMITTED NO ERROR IN ASSESSING DR. CHUMBLE'S TESTIMONY

The claimant's final argument is that the commission erred in relying on hearsay to reject Dr. Chumble's opinion. In a letter dated March 9, 2010, a medical case manager who was responsible for processing the claim characterized the accident as one in which "Stokes did not fall or stumble. He did not strike the wall or any other objects." In response, Dr. Chumble wrote that "[i]n view of the above details available now, it would be difficult to explain his symptoms of cervical and lumbar strain unless his body jerked with the shock injury." The commission mentioned the case manager's account in its opinion.

We have, of course, held that the commission may consider hearsay evidence, including medical reports of a hearsay nature. Pence Nissan Oldsmobile v. Oliver, 20 Va. App. 314, 317-19, 456 S.E.2d 541, 543-44 (1995). The commission's Rule 2.2 allows it to do so.

Again, the claimant stresses his own credibility and emphasizes his description of the accident over that of the case manager. The commission, however, was not required to accept the claimant's testimony about the incident, particularly since his later description of the accident conflicts with the early medical records. His claim of having no recollection of an automobile accident in 1996 undermines his reliability. Moreover, the description of the accident by the medical case manager is most consistent with the account drawn from the medical records generated immediately after the accident.

The claimant argues that in light of the credibility findings by the deputy commissioner, the majority violated the holding of Goodyear Tire & Rubber Co. v. Pierce, 5 Va. App. 374, 383, 363 S.E.2d 433, 438 (1987). Although the deputy commissioner accepted the claimant's version of events, the deputy commissioner did not make any specific credibility findings based on the claimant's demeanor and appearance. Therefore, the commission, which bears the ultimate responsibility for making credibility findings, was not even required to specifically explain why it did not believe the claimant's account. Wagner Enters., 12 Va. App. at 894, 407 S.E.2d at 35.

Finally, the claimant contends that even if he did not fly through the air and violently strike another machine, if his body "jerked" during the electrical shock, Dr. Chumble's note establishes that such a jerking motion caused the back injury. First, the claimant never testified that he made such a motion. The claimant's testimony was that he was projected fifteen feet into the air and landed on his back. Second, as noted above, all of the medical evidence was inconclusive, including Dr. Chumble's wavering opinions. Therefore, we find no error by the commission in its assessment of the evidence, including its consideration of Dr. Chumble's opinion.

CONCLUSION

For all of these reasons, we affirm the decision of the commission.

Affirmed.

- 12 -